**AMERICAN EXPRESS COMPANY,**
Plaintiff,

v.

**UNITED STATES, Defendant.**

**C. D. 3573; Protest Nos. 64/19377–14606.**

United States Customs Court
Second Division.
Sept. 26, 1968.

Schwartz & Lidstrom, Chicago, Ill., (Earl R. Lidstrom and Joseph Schwartz, Chicago, Ill., of counsel) for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Harold L. Grossman and Alfred A. Taylor, Jr., New York City, trial attorneys), for defendant.

Before RAO, Chief Judge, and FORD, Judge.

RAO, Chief Judge:

Upon importation from Spain through the port of Chicago, Illinois, certain wrought iron chandeliers included in the entries covered by the instant protest were classified by the customs authorities as other illuminating articles and parts thereof, of base metal, under item 653.40 of the Tariff Schedules of the United States, and were assessed with duty at the rate of 19 per centum ad valorem.

Plaintiff duly contested said classification and assessment, alleging that the chandeliers in issue should properly have been classified as electrical articles, and electrical parts of articles, not specially provided for, under item 688.40 of the Tariff Schedules of the United States, which provides duty at the rate of 11.5 per centum ad valorem.

The relevant statutory provisions read as follows:

Tariff Schedules of the United States, schedule 6, part 3, subpart F:

*Subpart F headnotes:*

1. The provisions of this subpart do not include—

\* \* \* \* \* \* \* \* \* \*

(iv) illuminating articles provided for in part 5 of this schedule.

\* \* \* \* \* \* \* \* \* \*

Illuminating articles and parts thereof, of base metal:

Incandescent lamps designed to be operated by propane or other gas, or by compressed air and kerosene or gasoline ........................... 10% ad val.

Other:

Table, floor and other portable lamps for indoor illumination, of brass ..................... 10.5% ad val.

653.40 Other ................................... 19% ad val.

Tariff Schedules of the United States, schedule 6, part 5:

Item 688.40   Electrical articles, and electrical parts of articles, not specially provided for .. 11.5% ad val.

———◆———

At trial, counsel for the respective parties agreed to submit the case for decision upon a stipulation of fact to the effect that the merchandise covered by

this protest consists of black wrought iron chandeliers of various styles and types, which illuminate, are composed of base metal, and come equipped with wires and fixtures which enable them to operate by electricity.

No other evidence was offered by either party. It thus appears that the issue presented for determination is whether the instant chandeliers are illuminating articles within the meaning of item 653.40 of the tariff schedules, as classified by the customs authorities, or are among those illuminating articles which are excluded from part 3, subpart F, and are properly classifiable as electrical articles, not specially provided for, within item 688.40, as contended by the plaintiff.

This is a case of first impression, and it is obvious from the opposing views of counsel that the language is susceptible of differing interpretations. On the one hand it is urged that these chandeliers are excluded from classification within item 653.40 because they are provided for in part 5 of schedule 6; on the other it is contended that these are illuminating articles covered by the language of item 653.40, and not excepted therefrom by the headnotes to part 5; and there is reason and logic to support both positions.

■ Where ambiguity exists in the phraseology of a statute, it is appropriate to consider extraneous data which may aid in the determination of its meaning. United States v. Good Neighbor Imports, Inc., 33 CCPA 91, C.A.D. 321; United States v. S. H. Kress & Co., 46 CCPA 135, C.A.D. 716. In seeking enlightenment and employing background material to explain the meaning of words of doubtful tenor, the court is guided by the basic precept that in the final analysis it is the intention of the legislature which governs the interpretation of its enactments. United States v. Demrak Trading Co., Inc., 43 CCPA 77, C.A.D. 611; United States v. Clay Adams Co., Inc., 20 CCPA 285, T.D. 46078.

Although no single factor is determinative of the conclusions we have reached in resolving the conflict between the provisions here involved, our analysis of the several indicia of congressional intent serves to support the action taken by the customs officials.

Initially we find that in submitting its final report of the tariff study undertaken pursuant to the provisions of Title I of the Customs Simplification Act of 1954, the United States Tariff Commission, in a document entitled Tariff Classification Study, Submitting Report, dated November 15, 1960, apprised the Congress of the standards to which it adhered in attempting to correct defects in the existing tariff structure. It is there stated, at page 7:

> In general, it can be stated that, to the best of the Commission's knowledge and belief, the proposed revised schedules do not involve significant rate changes. By this it is meant that, where rate changes have been proposed, (1) the change itself is small and would not affect trade, or (2) that the change, even if large in absolute amount, is unimportant because of the unimportance of the article in international trade.

Thus, the general policy of the framers of the tariff schedules was manifested at the very outset. Their purpose was to retain, wherever possible, existing rates of duty.

That the principles of the general policy governed the action taken on the subject of "illuminating articles" is evidenced by the following statement at page 203 of schedule 6 of said Submitting Report:

> Items 653.30 through 653.40 covering illuminating articles and parts thereof, of base metal, are derived, without significant rate change, from paragraphs 339 and 397 and from IRC section 4541. Item 653.35 covers table, floor and other portable lamps, of brass, for indoor illumination. The proposed rate is the current rate (12.5 percent) in paragraph 333 [sic] rounded out to 13 percent to compensate for the import tax of 1.275 cents per pound

imposed under IRC section 4541(2). Item 653.40 covers "other" illuminating articles dutiable at various rates under paragraphs 339 and 397 and the IRC. The proposed rate (19 percent ad valorem) is an estimated weighted average of the various current rates. It is to be noted that those items do not cover illuminating articles provided for in part 5 of this schedule.

Historically the classification of "illuminating or lighting fixtures, lamps, lamp bases, candelabra, and candlesticks," has been fraught with many perplexing problems giving rise to much litigation. The difficulty was created by the coexistence of a provision in the Tariff Act of 1930 (paragraph 353) for articles having as an essential feature an electrical element or device, and an unmistakable indication of congressional intent expressed in Senate Report No. 37, 71st Congress, 1st Session, page 19, to include such items within the basket provision for metal articles not otherwise specially provided for (paragraph 397). In a succession of cases involving, respectively, electrically lighted Christmas wreaths, United States v. N. Minami & Co., Inc., 29 CCPA 169, C.A.D. 188; electrical sockets, National Carloading Corp. v. United States, 44 CCPA 77, C.A.D. 640; flashlights, Biddle Purchasing Co. v. United States, 50 CCPA 71, C.A.D. 823; and night lamps, Southwestern Electric Company v. United States, 58 Cust.Ct. 134, C.D. 2906, the expressed intent of the Congress in enacting the Tariff Act of 1930 to include lighting fixtures and other illuminating articles as articles of metal, not specially provided for, rather than as articles with an essential electrical element was stated and given effect.

The listing of the stated paragraphs of the Tariff Act of 1930, to wit, paragraphs 339 and especially 397 as the source of the illuminating articles provision of the tariff schedules in the Submitting Report, supra, evinces a clear purpose to follow the practice existing under the prior act to place chandeliers of the type here in issue within the purview of item 653.40.

Although never considered a determinative indication of congressional intent in phrasing legislation, a contemporary construction of a statute is sometimes resorted to for confirmation of conclusions reached as the result of other rules of statutory interpretation. Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, 315, 53 S.Ct. 350, 77 L.Ed. 796; KMLA Broadcasting Corporation et al. v. Twentieth Century Cigarette Vendors Corporation et al., D.C., 264 F.Supp. 35, 41. In this connection we find in the Tariff Schedules of the United States Annotated (1963) statistics compiled in accordance with section 484(e) of the Tariff Act of 1930 [1] which definitely include merchandise of the type here at bar within the purview of the item 653.40 provision for:

Other illuminating articles:
    Electric

Also corroborative of the view that Congress intended to provide for chandeliers operating by electricity as other illuminating articles rather than as electrical articles is the statutory scheme of emphasizing particularity of description in the tariff schedules. Recognizing that one of the major defects of the Tariff Act of 1930 was the fact that large classes of merchandise of considerable significance in individual trades were buried in so-called basket

1. SEC. 484. ENTRY OF MERCHANDISE.
      *       *       *       *
      (e) STATISTICAL ENUMERATION.—The Secretary of the Treasury, the Secretary of Commerce, and the Chairman of the United States Tariff Commission are authorized and directed to establish from time to time for statistical purposes an enumeration of articles in such detail as in their judgment may be necessary, comprehending all merchandise imported into the United States, and as a part of the entry there shall be attached thereto or included therein an accurate statement specifying in terms of such detailed enumeration, the kinds and qualities of all merchandise imported and the value of the total quantity of each kind of article.

or catchall provisions, the United States Tariff Commission stated in its Submitting Report, supra, at page 15:

> * * * In the proposed schedules an attempt has been made to divest these baskets of these articles by the creation of many new classes, the provisions for which have been assimilated in the appropriate parts and subparts of the schedules. * * *

Notice of this factor was taken by this court in Laurence Myers Scaffolding Co. v. United States, 57 Cust.Ct. 333, C.D. 2809, wherein we stated:

> One has to peruse but briefly the provisions of the Tariff Schedules of the United States to be impressed with the particularity with which merchandise is provided for in detailed itemizations. In view of this particularization, it naturally follows that the language used was selected with the view to pinpoint the classification of merchandise rather than to encompass imported articles within the broader language which previously controlled the tariff classification of merchandise. * * *

To find, as urged by plaintiff, that the merchandise at bar is within item 688.40, a basket provision, without any indication that a result contrary to the above was intended in the case of electric illuminating articles, would be out of keeping with the general tendency of the tariff schedules to deemphasize the importance and to restrict the scope of basket provisions. See Submitting Report, supra, part II, E, 4, pages 15 and 16.

Additional support for classification of the chandeliers at bar as illuminating articles of base metal is also furnished by the Explanatory Notes to the Brussels Nomenclature, 1955. Since the Submitting Report, supra, states at page 8 that "The 'Brussels Nomenclature' and the 'Standard Industrial Classification Manual' exerted the greatest influence on the arrangement of the proposed revised schedules," those articles included in the equivalent sections of the Brussels Nomenclature are some evidence of the intent of Congress with respect to the classification of articles under the Tariff Schedules of the United States. The pertinent heading number of the Brussels Nomenclature reads as follows:

> 83.07—LAMPS AND LIGHTING FITTINGS, OF BASE METAL, AND PARTS THEREOF, OF BASE METAL (EXCLUDING SWITCHES, ELECTRIC LAMP HOLDERS, ELECTRIC LAMPS FOR VEHICLES, ELECTRIC BATTERY OR MAGNETO LAMPS, AND OTHER ARTICLES FALLING WITHIN CHAPTER 85 EXCEPT HEALING No. 85.22).

This heading covers lamps and lighting fittings of the following types:

> (A) Electric lamps and lighting fittings (including those for fluorescent lighting); but the heading *excludes* cycle and motor vehicle types (heading 85.09), portable battery or magneto lamps (heading 85.10) and arc lamps (heading 85.20). Lamps and fittings falling within the present heading may be equipped with bulb-holders, flex and plugs, switches, etc.

> (B) Lamps, including candlesticks and candelabra, using any other source of light (animal or vegetable oil, petrol, paraffin, coal, gas, acetylene, etc.).

Non-metallic and composite lamps, in which the metals do not form the essential part, are *excluded* from this heading. Thus a chandelier (e. g., of the so-called Venetian type) consisting essentially of glass pendants and other glass ornamentation would be classified in *Chapter 70* even though it may require a connecting metal framework; on the other hand, a lighting pendant essentially of metal, but fitted with subsidiary glass light-diffusing shades, reflectors, etc., would remain in the present heading.

The present heading covers in particular:

(1) *Lamps and light fittings normally used for illumination of rooms,* e. g.:—hanging lamps, bowl lamps, chandeliers, candelabra; ceiling lamps; wall bracket lamps; standard lamps; table lamps, desk lamps, bedside lamps; night lamps; candle brackets for piano; water-tight lamps.

(2) *Lamps for exterior lighting* (e. g., street lamps, porch and gate lamps).

(3) *Portable and vehicle, etc., lamps (other than those of headings 85.09 and 85.10),* e. g.: hurricane lamps; stable-lamps; hand lanterns; miners' lamps; quarrymen's lamps; candlesticks; locomotive and railway rolling-stock lanterns, ships' lanterns and cycle lamps; headlamps, etc., for aircraft or trains.

(4) *Specialised* [sic] *lamps,* e. g.:— darkroom lamps; shopwindow lamps; machine lamps (separately imported); photographic studio lamps; special illumination lamps for public buildings, monuments, parks, etc.; non-flashing beacons for aerodromes; inspection lamps.

The heading also covers non-electric base metal parts of lamps and lighting fittings, e. g.: suspension assemblies (rigid or chain type) for lighting pendants, etc.; ceiling rosettes; globe holders; bases, handles and cases for hand lamps; burners for gas, paraffin, acetylene, etc., lamps; mantle holders; lantern frames; shades and reflectors.

Separately imported electrical fittings for lamps are *excluded* (Chapter 85).

\* \* \* \* \* \*

*The heading also excludes:*

(a) Blow lamps (heading 82.04).

(b) Electric filament lamps and discharge lamps, and electrically ignited photographic flashbulbs (heading 85.20).

(c) Photographic flashlight apparatus (heading 90.07).

(d) Searchlights and spotlights (heading 90.13).

(e) Medical diagnostic, probing, irradiation, etc. lamps (heading 90.17).

The above indications of legislative intent found in both the Tariff Schedules of the United States and the Brussels Nomenclature are further strengthened by the fact that, in this present age, it is obvious that the great percentage of illuminating articles are electrical. Had the legislature intended to exclude electrical lighting fixtures from the provision for illuminating articles, thereby eliminating the greater number of such articles from the purview of that item, doubtless this limitation, which would be directly contrary to the common meaning of "illuminating articles," would have been explicitly stated.

Against this array of available data leading directly to the conclusion that Congress in adopting the recommendations of the Tariff Commission provided for electrical lighting fixtures in item 653.40 under the designation of illuminating articles is interposed plaintiff's contention that the exclusionary language of subpart F, part 1 (iv), supra, to wit, "illuminating articles provided for in part 5 of this schedule," operates to relegate such fixtures to the provision in item 688.40 for "electrical articles, \* \* \* not specially provided for." Counsel argues that had Congress intended to limit the exclusion to those illuminating articles *eo nomine* provided for in part 5, it would have used the more precise expression "specially provided for" as it did with respect to electric conductors in schedule 6, part 3, subpart B, 1 (ii).

The plausibility of this argument diminishes materially when the two commodities and their respective relationships to the general provision for electrical articles, not specially provided

for, are compared. Without doubt, electrical conductors are electrical articles which, in the absence of more specific provision are covered by the language "electrical articles * * * not specially provided for." Hence Congress' desire to exclude from subpart B those conductors only which are specifically enumerated in part 5 of schedule 6 could not have been accomplished without a careful statement to that effect. Consequently the language "conductors *specially* provided for in part 5 of this schedule" [emphasis supplied] was clearly essential. It is by no means obvious, however, that a general provision for electrical articles would cover lighting fixtures, since historically, and by every other expression of the congressional intention, lighting fixtures, whether or not operated electrically, have never been considered to be included within the category of electrical articles for tariff purposes.

Although certain electrical illuminating articles are provided for by name in part 5 of schedule 6, they are, for the most part, the kinds of items which previously found classification in paragraph 353 of the Tariff Act of 1930. See Tariff Classification Study explanatory materials, volume 2, pages 487 and 489. Therefore, their inclusion in this portion of the tariff schedules need not be construed as suggesting that all other electrical illuminating articles fall within the scope of the phrase electrical articles, not specially provided for. Indeed the contrary is indicated by the several other relevant considerations hereinabove discussed. Seemingly, therefore, it would not have occurred to those drafting the language relied upon by plaintiff that absent the word "specially" in subpart F, part 1, subdivision (iv), supra, electrical lighting fixtures for the illumination of rooms would be provided for in part 5 as electrical articles, not specially provided for.

Neither are we dissuaded from our conclusions herein by the argument that schedule 7, part 4, subpart A, headnote 1, subdivision (iii), in excluding lamps and other lighting apparatus from the category of furniture, makes reference to part 5 of schedule 6. It is to be noted that the definition of furniture in headnote 1 embraces movable articles of utility whether or not affixed to the floor or walls of the designated areas, but does not include ceiling attachments. Consequently the reference to part 5 of schedule 6, for the exclusion of "lamps and other lighting fixtures" suggests that what Congress had in mind were portable lamps of the types *eo nomine* specified in said part 5 which might otherwise have been considered to be furniture, and it was not attempting to direct by this oblique method that the general provision for electrical articles should be construed as covering the illuminating articles excluded from part 3, subpart F, supra, but not provided for by name in part 5.

In view of what we conceive to be the legislative intent to perpetuate all prior distinctions between lighting fixtures and electrical articles, we find no merit in the contention of plaintiff that the illuminating articles provisions of schedule 6, part 3, subpart F, should be construed as relating to nonelectrical lighting equipment and that all electrical illuminating articles not specifically enumerated in part 5 are electrical articles not specially provided for. So radical a departure from preexisting concepts must surely require a more explicit expression upon the part of Congress than the language invoked by plaintiff.

■ By reason of the foregoing, we conclude that the merchandise at bar was correctly classified by the customs officials. All claims in the protest are, therefore, overruled.

Judgment will be entered accordingly.