**MORRIS FRIEDMAN & CO.**

v.

**UNITED STATES.**

C. D. 4561; Court No. 69/5352–100699.

United States Customs Court.

Oct. 21, 1974.

Allerton deC. Tompkins, New York City, for plaintiff.

Carla A. Hills, Asst. Atty. Gen. (Joseph I. Liebman, New York City, trial attorney), for defendant.

FORD, Judge:

This case involves the proper classification of certain brass illuminating articles designed for use with one or more candles.[1] They were assessed with duty at the rate of 17 per centum ad valorem under the provisions of item 653.37, Tariff Schedules of the United States, and primarily claimed to be subject to duty at the rate of 9 per centum ad valorem under item 653.35, Tariff Schedules of the United States. The pertinent portions of the provisions involved read as follows:

Illuminating articles and parts thereof, of base metal:

\*    \*    \*    \*    \*    \*    \*    \*

    Other:

653.35        Table, floor and other portable lamps for indoor illumination, of brass ........ 9% ad val.

    Other:

653.37         Of brass ...................... 17% ad val.

Alternatively plaintiff contends for classification under item 654.00, Tariff Schedules of the United States, which provides for duty at the rate of 9 per centum ad valorem and reads as follows:

Articles not specially provided for of a type used for household, table, or kitchen use; toilet and sanitary wares; all the foregoing and parts thereof, of metal:

\*    \*    \*    \*    \*    \*    \*    \*

Articles, wares, and parts, of base metal, not coated or plated with precious metal:

\*    \*    \*    \*    \*    \*    \*    \*

    Of copper:

654.00        Of brass ...................... 9% ad val.

———◆———

The record upon which this case was submitted consists of the official papers which were received but not marked in evidence and the testimony of two witnesses called on behalf of plaintiff and one on behalf of defendant. In addition seven exhibits were received in evidence.

The first witness called on behalf of plaintiff was Mr. Isadore Serot, president of the actual importer, Terra Sancta Guild, whose business is the importation and sale of religious articles, lamps, gift items and household items which are sold throughout the United States. Mr. Serot identified the various exhibits.

The second witness called on behalf of plaintiff was Father Joseph B. Graham, a Catholic priest. .

1. The merchandise is identified on the invoices as candlesticks, candleholders, Menorahs, lanterns and sanctuary lamps.

Defendant called on its behalf Mr. Charles M. Eckman, chairman of the board of Virginia Metalcrafters, manufacturers of candlesticks, chandeliers, fireplace equipment, trivets, plaques, antique reproductions and lamps. This company sells to customers in all 50 States.

Classification of merchandise under the superior heading "illuminating articles * * *" carries with it a presumption of correctness that the merchandise is illuminating articles. In addition, paragraph 6 of defendant's answer together with the testimony adduced at the trial establishes the involved merchandise to be illuminating articles. Inasmuch as the classified and claimed provisions fall under the same superior heading and the merchandise is admittedly brass (see paragraph 6 of defendant's answer), the issue to be determined is whether said articles are lamps and if so are they table, floor or portable lamps for indoor illumination.

The candlesticks, candleholders, Menorahs, lanterns and sanctuary lamps involved herein all use candles for illumination and are of a religious nature or contain religious characteristics or motifs used by Christian religions. The involved merchandise is not however inherently religious articles as were the candlesticks and candelabras involved in

Ignaz Strauss & Co., Inc. v. United States, 56 Cust.Ct. 54, C.D. 2611 (1966), modified, 54 CCPA 125, C.A.D. 923 (1967). Neither party alleges nor was proof adduced as to the principle of commercial designation. Therefore, the common meaning of the term lamp must be ascertained. Common meaning is a question of law to be determined by the court. United States v. Florea & Co., Inc., 25 CCPA 292, T.D. 49396 (1938). The meaning of a tariff term is presumed to be the same as its common or dictionary meaning in the absence of evidence to the contrary. In determining the common meaning the court may accept or reject evidence of such meaning and may consult dictionaries or lexicographic authorities as an aid. United States v. C. J. Tower & Sons of Buffalo, N. Y., 48 CCPA 87, C.A.D. 770 (1961). The court in order to determine the intent of Congress in enacting the particular tariff provisions may utilize the legislative history.

In the case of American Express Company v. United States, 61 Cust.Ct. 208, C.D. 3573 (1968), aff'd, United States v. American Express Company, 57 CCPA 100, C.A.D. 985, 426 F.2d 383 (1970), the court reviewed the legislative history of the provision for illuminating articles. This court in its decision reviewed the Tariff Classification Study and the Brussels Nomenclature making the following comment:

Additional support for classification of the chandeliers at bar as illuminating articles of base metal is also furnished by the Explanatory Notes to the Brussels Nomenclature, 1955. Since the Submitting Report, *supra*, states at page 8 that "The 'Brussels Nomenclature' and the 'Standard Industrial Classification Manual' exerted the greatest influence on the arrangement of the proposed revised schedules," those articles included in the equivalent sections of the Brussels Nomenclature are some evidence of the intent of Congress with respect to the classification of articles under the Tariff Schedules of the United States. The pertinent heading number of the Brussels Nomenclature reads as follows:

83.07—Lamps and Lighting Fittings, of Base Metal, and Parts Thereof, of Base Metal (Excluding Switches, Electric Lamp Holders, Electric Lamps for Vehicles, Electric Battery or Magneto

Lamps, and Other Articles Falling Within Chapter 85 Except Heading No. 85.22).

This heading covers lamps and lighting fittings of the following types:

\* \* \* \* \* \* \* \* \* \*

(B) Lamps, including candlesticks and candelabra, using any other source of light (animal or vegetable oil, petrol, paraffin, coal, gas, acetylene, etc.).

\* \* \* \* \* \* \* \* \*

The present heading covers in particular:

(1) *Lamps and light fittings normally used for illumination of rooms*, e. g.:—hanging lamps, bowl lamps, chandeliers, candelabra; ceiling lamps, wall bracket lamps; standard lamps; table lamps, desk lamps, bedside lamps; night lamps; candle brackets·for pianos; water-tight lamps.

\* \* \* \* \* \* \* \* \*

(3) *Portable and vehicle, etc., lamps (other than those of headings 85.09 and 85.10)*, e. g.: hurricane lamps; stablelamps; hand lanterns; miners' lamps; quarrymen's lamps; candlesticks; locomotive and railway rolling-stock lanterns, ships' lanterns and cycle lamps; headlamps, etc., for aircraft or trains.

Also supportive of the fact that candle illuminated articles are considered lamps are the definitions contained in various dictionaries and lexicographic source.

The Encyclopedia Americana (1973) defines lamp as follows:

lamp—any contrivance which affords a means of producing light, and sometimes heat, by electricity or by combustion of oils, gasses, *fats* [emphasis added] or flammable fluids. \* \* \*

Webster's Third New International Dictionary Unabridged (1965):

candle—1: a long slender cylindrical mass typically of *tallow or wax* [emphasis added] containing a wick of loosely twisted linen or cotton threads made by dipping or by casting in a metal mold and burned to give light.

tallow—1: animal *fat* [emphasis added]: suet. 2a: the rendered fat of cattle and sheep that is white and almost tasteless when pure, that is in general harder than grease with a titer of above 40°C, that is composed of glycerides of fatty acids containing a large proportion of palmitic acid and stearic acid, and that is used chiefly in making soap glycerol, margarine, candles, and lubricants. b: any of various fats (as from other animals or from plants) resembling beef and mutton tallow \* \* \*.

Webster's New International Dictionary Second Edition Unabridged (1949):

candelabrum—a: A candlestick, usually ornamental.

b: A *lampstand* [emphasis added] of any sort, often large and highly ornamental.

candlestick—A utensil for supporting a candle, whether elaborately made or in the common form of a saucer with a socket at the center; specif., the seven-branched golden candlestick, or more properly *lampstand* [emphasis added], of the Jewish tabernacle;—used figuratively as a symbol for a church or some spiritual enlightener, with reference to the seven candlesticks of Revelation.

Webster's Third New International Dictionary Unabridged (1965):

lampstand—a pillar, tripod, or stand for supporting or holding a lamp.

lantern—1: a protective enclosure for a light with transparent openings and often a supporting frame or carrying handle: a portable lamp. 2: a giver of light.

Funk & Wagnalls Standard Dictionary (1963):

lampad—A lamp or torch; candlestick.

--------

The foregoing definitions bring an illuminating article, which utilizes a candle, within the common meaning of the term lamp. The record testimony and a consideration of the seven exhibits are clearly supportive of this fact.

Exhibit 1 which was described on the invoice as a sanctuary lamp is used suspended from a hook to illuminate a holy object or icon according to witness Serot. It is used, based upon the experience of Father Graham, in a small chapel, before the Blessed Sacrament as a sanctuary lamp or on the side altar or in front of a statue or picture. It is designed to hold a 40-hour candle which burns for a period of devotion which was described by Father Graham as follows:

A period of devotion before the Blessed Sacrament, at which time we have certain ceremonies in church and during which time, the people are invited to come into the church to make specific visits to the Blessed Sacrament and various things of that nature.

According to both witnesses exhibit 1 was portable since all that is required to move the article is to remove it from the hook. Such an article would not be considered a fixture which becomes part of realty since it may be removed without material injury to the realty. Boise Ass'n of Credit Men v. Ellis, 26 Idaho 438, 144 P. 6, 9 (1914). The term portable also would bring exhibit 1 within the following definition as set forth in Webster's Third New International Dictionary (1965):

portable—1: capable of being carried: easily or conveniently transported: light or manageable enough to be readily moved.

An examination of exhibit 1 together with the testimony establishes said exhibit as one not used on a table but which is used indoors and is portable.

Exhibits 2 and 6 are candleholders which are used on an altar at the time of the celebration of Mass and various other devotions, benediction or novenas. An altar according to the witnesses called on behalf of plaintiff is a table. The illumination of the candles during a religious ceremony has the significance described by Father Graham as follows:

The significance of the candle is to symbolize the light of Christ. As the candle gives light to the area in which it is placed, so Christ gives light to the world. So, the significance of the

candle would be as a representation of Christ as the light of the world.

Exhibits 2 and 6 are not suitable for use outdoors in their present condition. While witness Eckman called on behalf of defendant did state they could be used outdoors with a hurricane shade, the merchandise before the court does not have such addition. It is therefore apparent exhibits 2 and 6 are used on a table indoors and are obviously portable.

Exhibit 3, the Christ candleholder, according to witness Serot is used on a table usually in combination with other articles. The other articles according to Father Graham are Advent wreaths which contain four candles and are lit four times during the Advent season. Exhibit 3 would be placed in the center of the Advent wreath and lit to signify the birth of Christ. It would normally be used on a table in front of an altar or in the front of a classroom on a table. The exhibit has a quote from the scriptures and is in the form of a Greek cross. This exhibit is used on a table, is portable and used indoors.

Exhibit 4 is a floor candleholder which may be removed from its base for use in a procession within the church. This exhibit is therefore used on the floor or carried in a procession indoors.

Exhibit 5 is a Menorah similar to that used by people of the Jewish faith and is known by them as a Chanukah lamp according to witness Serot. Since many aspects of Christianity have roots in the Jewish religious observance, the witness indicated that the Menorah is becoming a tradition among Christians during the Advent season and Christmas. The exhibit has the Star of David which is one of the earliest Christian symbols and the symbol IX embodied within the star which symbol is the monogram of Christ according to Mr. Serot. Father Graham has seen the exhibit used in classrooms

and in Newman Centers [2] to further the spirit of ecumenism. In Judaism, the Menorah is the tree of life. In Catholic symbolism, the Star of David is also the symbol for the Blessed Virgin. They are used on a table indoors during a particular season of the year.

Exhibit 7, a lantern, Mr. Serot testified was used indoors either on a table or hung by a chain. It is used during a religious discussion or to light a picture or icon. Father Graham testified he has never seen one hung on a chain but has seen the lantern placed on a desk in classrooms during a reading from the scriptures. Exhibit 7 is inherently religious according to Father Graham, as indicated by the following:

On one side, it has a fish, the ichthys, which is a Greek word referring to Christ. So, the fish is definitely symbolic of Christianity. On another side, it has the anchor, which is a symbol of hope, in the Christian church, and on another side, it has a star, which is symbolic of peace and light, and the symbol for love, I don't recognize, but the other symbols are definitely significant.

According to Father Graham, exhibit 7 could also be used on an altar or as a sanctuary lamp. A sanctuary lamp was described by Father Graham as follows:

A lamp that is placed in the sanctuary of the church, by canon law, it is required to have them—a lamp burning 24 hours a day, in order to call attention to the fact that the Blessed Sacrament is there. By its light, it signifies the fact that the Blessed Sacrament is present in the church.

■ The defendant contends as did the testimony of its witness, Eckman, that a lamp is a device intended to provide illumination through the use of

2. A Newman Center is an institution run in conjunction with a nonsectarian college campus in order to bring a Christian or Catholic atmosphere for the Catholic students that go to that institution.

some energizing source or fuel such as electricity, gas or oil but not candles. A review of the testimony and exhibits as well as the legislative history and common meaning lends support to the view that defendant's position is too restrictive. Nor does defendant's position appear to fall within the intent of Congress in enacting the involved provision.

Accordingly, I hold the imported merchandise to be properly dutiable as claimed under item 653.35, *supra,* at 9 per centum ad valorem. In view of this finding, it is unnecessary to consider plaintiff's alternate claim under item 654.00 since item 653.35 is more specific and therefore controlling.

Judgment will be entered accordingly.