(C.D. 2541)

INDUSTRIAL CHEMICAL & DYE Co. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided June 7, 1965)

*Siegel, Mandell & Davidson* (*David Serko* and *Allan H. Kamnitz* of counsel) for the plaintiff.
*John W. Douglas*, Assistant Attorney General (*Richard J. Kaplan* and *Arthur H. Steinberg*, trial attorneys), for the defendant.

Before RAO and FORD, Judges

RAO, Judge: Certain merchandise, described as "Luxor Nickel Powder," was classified by the collector of customs for duty purposes as nickel articles or wares, wholly or partly manufactured, and is claimed by the plaintiff to be subject to duty at a lower rate as nickel in a crude form.

Several importations are involved, covered by the four protests enumerated in the schedule attached to and made a part of this decision and which have been consolidated for hearing and determination.

The statutory provisions are as follows:

Paragraph 397 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 397), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, which was applied:

Articles or wares not specially provided for, whether party or wholly manu-
factured:

```
  *        *        *        *        *        *        *
      Composed wholly or in chief value, of * * * nickel * * *:
          Woven wire fencing * * *
  *        *        *        *        *        *        **
          Other * * *_____ 22½% ad val.
```

Paragraph 389 of said act, as modified, *supra*, claimed:

Nickel, * * *:
    In pigs or ingots, shot, cubes, grains, cathodes, or similar forms__ 1¼¢ per lb.
    In bars, rods, plates, sheet, strips, strands, castings, wire, tubes, tubing,
        anodes, or electrodes_____ * * *

Briefly stated, the plaintiff's position herein is that the instant merchandise is not a manufactured article of nickel covered by paragraph 397, *supra*, but is rather in a form similar to those named in the first subdivision of paragraph 389.

In support of its contention, plaintiff offered the testimony of Ralph Firman, vice president of the plaintiff-importer, and personally familiar with the purchase and sale of the instant merchandise and the nickel market generally. In addition thereto, invoices and United States Customs Laboratory reports covering the importations in controversy were received in evidence without being marked. As numbered exhibits, the following were received on behalf of plaintiff:

Exhibit 1—a packet containing a sample of the imported merchandise.

Illustrative exhibit 2—a packet containing large nickel shot.

Illustrative exhibit 3—nickel shot smaller in size than illustrative exhibit 2.

Illustrative exhibit 4—nickel shot in a finer form than either illustrative exhibit 2 or 3.

Illustrative exhibit 5—a packet of nickel cathodes.

Illustrative exhibit 6—a packet of nickel powder.

A sample of nickel grains, another of the forms specified by name in the first subdivision of paragraph 389 of the Tariff Act of 1930, as modified, *supra*, was not offered in evidence. Plaintiff's witness Firman testified to the fact that the term "nickel grains" is not used in the trade but that one might consider illustrative exhibit 4, consisting of small size nickel shot, to be nickel grains; that the only difference between shot and nickel grains would be in size.

From the testimonial and other evidence of record the following facts appear: It has been agreed by the parties hereto that the imported merchandise is composed wholly of nickel. It was purchased

from the Canadian Bronze Powder Works, Ltd., of Montreal, Canada. In its prior state, the merchandise was in the form of nickel shot. At the time of the instant importations, nickel was in tight supply and, in order to obtain a license to export such merchandise from Canada, it was necessary to do something with the basic material rather than to attempt to export it as shot. Therefore, the merchandise was pulverized to some extent.

The merchandise is described as consisting of finely divided particles of nickel of various shapes, some of the particles of which come within the term "shot" or "grains." Because of its heterogeneous nature, the imported nickel product was referred to as a basic type or a crude form of nickel.

The United States Customs Laboratory report attached to entry 82965 states in part:

> The sample in the form of flaky particles (approximately 90% passing through a No. 100 mesh sieve) is powdered nickel metal containing a very small amount of organic matter.

>     *       *       *       *       *       *       *

Practically identical language appears in the customs laboratory reports accompanying entries 88711 and 84240 with the exception of the approximate percentage of particles which would pass through a No. 100 mesh sieve, said percentages being 81 percent and 88 percent, respectively. Attached to entry 84241 is a United States Customs Laboratory report which reads:

> The sample of nickel powder in the form of coarse and fine flaky particles is composed of metallic nickel with less than 0.5% of an organic lubricant (probably stearic acid). Approximately 90% of the powder passes through a No. 100 mesh sieve.

There does not appear to be a laboratory report accompanying entry 83044.

Is merchandise in such a form, which derives from nickel shot subjected to a pulverizing process prior to importation, to be considered as articles or wares, wholly or partly manufactured, within the purview of paragraph 397 of the Tariff Act of 1930, as modified, *supra*, as classified by the collector of customs?

As shown above, the only purpose of said processing was to obtain a Canadian export license at a time when nickel was in short supply. There is unrebutted testimony to the effect that the processing did not advance the material from its crude state. As a matter of fact, it detracted from its value by virtue of the percentage of nickel lost due to its powdery state.

On this phase of the instant case, we consider the situation presented as akin to the case of *Lackawanna Steel Co. et al.* v. *United States*, 10 Ct. Cust. Appls. 93, T.D. 38359, wherein the court held that lime-

stone which had been crushed solely to facilitate its transportation was not subjected to such a manipulation of the commodity to constitute a manufacture in whole or in part thereof but had merely been processed in aid of careful and economical transportation.

On the record here presented, we are of the opinion that the pulverizing of the nickel shot into a powdery form was not such a manipulation of the nickel to constitute a manufacture in whole or in part thereof.

Accordingly, it is our view that the plaintiff has sustained the first part of its twofold burden of proof by overcoming the presumption of correctness attached to the collector's classification of the merchandise as articles or wares in chief value of nickel, wholly or partly manufactured, within the scope of paragraph 397 of the Tariff Act of 1930, as modified, *supra*.

We turn now to the second phase of the case. Is the merchandise in its imported condition nickel in "similar forms" to those enumerated in the first subdivision of said paragraph 389, as modified, *supra*?

The import of the words "similar forms," as applied to the tariff provision under consideration, has not previously been the subject of judicial construction, although said words also appeared in the predecessor paragraph to paragraph 389 of the Tariff Act of 1930, namely, paragraph 390 of the Tariff Act of 1922.

From the provisions of the statute as set forth above, it will be observed that the first subdivision of paragraph 389 specifies *eo nomine* nickel in the form of "pigs or ingots, shot, cubes, grains, cathodes," whereas the second subdivision thereof provides for "bars, rods, plates, sheets, strips, strands, castings, wire, tubes, tubing, anodes, or electrodes." The foregoing groupings would seem to indicate that the first subdivision was intended to provide for nickel in crude forms, whereas the second subdivision covers nickel in the form of castings, forgings, or mill shapes. This fact is borne out by the following quotation from the 1948 Summaries of Tariff Information under the caption "NICKEL AND NICKEL-ALLOY METAL (PAR. 389)":

Description and uses.—This summary covers nickel and nickel alloys (except German silver or nickel silver) in such crude metal forms as pigs or ingots, shot, cubes, grains, and cathodes. Nickel and nickel-alloy mill shapes and castings, such as bars, rods, plates, sheets, wire, tubes, anodes, and electrodes, are discussed in a separate summary under paragraph 389; * * *.

The evidence of record in the instant case is to the effect that the nickel powder in controversy did not have any other use than for the extraction therefrom of its nickel content; that all of the imported merchandise was used to produce anodes for electro-plating purposes. It appears further that the common characteristics of nickel in the various forms represented by plaintiff's exhibits 1 through 6 are the fact that they are all pure forms of nickel; that they are used spe-

cifically for their nickel content; and that the variation in size and form is to facilitate their use in industry.

In view of the fact that the nickel powder before the court consists of nickel in a crude form as are pigs or ingots, shot, cubes, grains, and cathodes, and the further fact that the instant merchandise like the forms *eo nomine* provided for in paragraph 389 is used specifically for its nickel content in the production of end products, the court is of the opinion that said nickel powder is nickel in a form similar to those *eo nomine* provided for in the first subdivision of paragraph 389 of the Tariff Act of 1930, as modified, *supra*.

Consideration has been given to the various cases cited by the parties in their briefs but nothing therein contained deters us from the conclusion herein reached.

Upon the record presented, we hold, therefore, that the merchandise covered by the instant protests should properly have been classified as nickel in similar form to those named in the first subdivision of paragraph 389 of the Tariff Act of 1930, as modified, *supra*, and subjected to duty at the rate of 1¼ cents per pound. The claim in the protests to that effect is, accordingly, sustained.

Judgment will issue accordingly.