**A. JOHNSON & CO., INC.**

v.

**UNITED STATES.**

**C.D. 4650, Court Nos. 70/19276, etc.**

United States Customs Court.

May 6, 1976.

---

Busby, Rivkin, Sherman, Levy & Rehm, New York City (Joseph S. Kaplan, New York City, of counsel) for the plaintiff.

Rex E. Lee, Asst. Atty. Gen., Washington, D.C. (Andrew P. Vance, Chief, Customs Section, and Joseph I. Liebman, New York City, trial attorney), for the defendant.

## RICHARDSON, Judge.

The merchandise in this case, described on commercial invoices as Mairon Electro-lytic Iron Cathode Plate or Mairon Electrolytic Iron Flake, was exported from Japan in 1969 and 1970, and classified in liquidation under TSUS item 657.20 as modified by T.D. 68–9 as articles of iron at the duty rate of 13 or 15 *per centum ad valorem*, depending upon date of entry.* It is alleged that the merchandise should be classified under TSUS item 415.50 as modified by T.D. 68–9 as chemical elements in any physical form at the duty rate of 7 or 8 *per centum ad valorem*, depending upon date of entry, or alternatively, under TSUS item 799.00 as modified by T.D. 68–9 as any article not provided for elsewhere in the schedules at the duty rate of 7 or 8 *per centum ad valorem*, depending upon date of entry.

The essential facts in the case are not in dispute. "Mairon", the proprietary name given by the exporter, Toho Zinc Co., Ltd., to the merchandise in this action, is produced from residues derived from the refining of zinc ore. Its production involves a number of steps, a principal one being the deposition of iron upon a stainless steel cathode which has been electrolyzed from a cast-iron anode.

The entire series of steps was described and diagramed at the trial by Dr. Shizuo Sato, chief engineer in charge of refining at Toho's head office, and the inventor of a patented process for electrolyzing iron (Shizuo process) which was used in the production of Mairon. In its imported form Mairon, as exemplified by exhibit 1, consists of flat fragments of iron of irregular shape generally less than 2 inches across at the widest point and about one-fifth of an inch thick. Mairon is iron of more than 99.9% purity; and its shape results from the manner in which the electrolyzed iron is removed from the stainless steel cathode.

Philip F. Sheridan, manager of plaintiff's industrial sales department, testified that Mairon is a raw material which is primarily used for alloying purposes, and in circumstances where very high purity is desirable, and that its form and size make it suitable

---

* The government excepted the entry covered by protest 70/21566, wherein it is conceded that the merchandise was erroneously classified under TSUS item 609.17.

for vacuum melting. Some is also used in air melting in induction furnaces. Although literature published by plaintiff indicates usage of Mairon as a catalyzer, among other things, the witness Sheridan stated that Mairon is not commercially suitable for such usage because it is too expensive.

Plaintiff argues that Mairon is a basic shape and form of iron which has not been provided for in Part 2B of TSUS Schedule 6, is not classifiable in Part 3G of TSUS Schedule 6 because it is iron and not a product of iron, but that it is provided for in TSUS item 415.50 because it is a chemical element not otherwise provided for if not excluded therefrom by headnote 1(iii) of TSUS Schedule 4, or is provided for under TSUS item 799.00 because it is not provided for elsewhere in the TSUS. Defendant argues that Mairon, whether or not a basic shape or form of' iron, is definitely iron and is provided for in TSUS item 657.20 because the word "article" is broad enough to encompass *materials.*

■ In the court's opinion Mairon is undoubtedly iron in a primary form, whether considered as fragments or as flakes. However, Part 2B of TSUS Schedule 6 contains no provision for iron in the form of fragments or flakes, and unlike the other metals dealt with in Schedule 6, no provision for *unwrought* iron. Consequently, Mairon is clearly not provided for in Part 2B of TSUS Schedule 6.

■ Neither is Mairon provided for under TSUS item 657.20, a "basket" provision in Part 3G of TSUS Schedule 6. Mairon is not an article of iron, but iron itself. And the emphasis in item 657.20 is not on the breadth of the word "article" as defendant's argument suggests, but rather on the scope of the term "articles of iron". A mere reading and comparison of Part 2 with Part 3 of TSUS Schedule 6 is sufficient, in the court's opinion, to reveal a Congressional intent to separate provisions relating to metal as material from provisions relating to products and advanced forms of such metal in achieving by deed, if not by word, a limitation on the application of the word

"article" as used in this context. Thus, some advancement of the material iron is essential in order to properly designate the material iron as an "article" of iron. *Junge v. Hedden*, 146 U.S. 233, 13 S.Ct. 88, 36 L.Ed. 953 (1892). In the *Junge* case the Supreme Court, speaking with respect to an importation of dental rubber (composed of India rubber sheets subjected to chemical and other treatment) said (page 239, 13 S.Ct. page 90):

> Nor are we impressed with the argument that, being rubber itself, it must be regarded as a material and not an article composed of rubber, *for its adaptation to dental purposes has differentiated it commercially.* Washing and scouring wool does not make the resulting wool a manufacture of wool; cleaning and ginning cotton does not make the resulting cotton a manufacture of cotton; *but sulphur and coloring matter*, when applied as here, *make the resulting rubber*, while still remaining rubber, *an article of rubber* as contradistinguished from rubber crude or rubber merely cleansed of impurities. [Emphasis added.]

The *Junge* case involved a duty assessment under and judicial construction of a "basket" provision in paragraph 454 of Schedule N of the 1883 Tariff Act reading "Articles composed of India rubber, not specially enumerated or provided for in this act." In more recent times this court has construed paragraph 397 of the 1930 Tariff Act, a "basket" provision of the metals schedule, and predecessor of TSUS item 657.20, so as to exclude metal as material from classification thereunder. See *Industrial Chemical & Dye Co. v. United States*, 54 Cust.Ct. 264, C.D. 2541 (1965). In C.D. 2541 the Customs Court held nickel powder not to be classifiable as contended for by the government under paragraph 397 as an *article* of nickel but as nickel *per se* in a form similar to those *eo nomine* provided for under paragraph 389 as claimed by the importer. Furthermore, that Part 3 of TSUS Schedule 6 was not intended by Congress to be a depository for primary forms of metal is indicated in the treatment given

to zinc metal where a differentiation has been made between zinc anode, a primary form provided for in Part 2H of TSUS Schedule 6 under the heading of *unwrought* zinc (item 626.02), and zinc anode dedicated to specific uses by reason of the presence of special lugs, straps, etc. and provided for in Part 3F of TSUS Schedule 6 (item 653.25). *Tariff Classification Study*, Schedule 6, pages 33, 203.

Turning attention now to the chemicals schedule in the TSUS, it is to be noted that the superior heading under Part 2A of Schedule 4, reading "Chemical elements in any physical form" describes iron fragments such as those at bar, inasmuch as iron is a chemical element. *Encyclopaedia Britannica*, 1963 Ed., Vol. 12, p. 645. Indeed, the *Tariff Classification Study* recognized that this description aptly applied to metals when it reported, "Some of the recognized metals are not named in the metals schedule and therefore are classified in the chemicals schedule. At least one metal, silicon, though specifically named in the metals schedule, is classified in the chemicals schedule if in a hyper-pure form." *Tariff Classification Study*, Schedule 6, page 86. But, as plaintiff views the situation, the problem here is whether iron fragments such as those at bar are excluded from classification under Part 2A of Schedule 4 by reason of language appearing in headnote 1(iii) to Schedule 4 which reads: "This schedule does not include— * * * metals provided for in part 2 of schedule 6." Defendant takes the position that this exclusionary language applies to iron *in toto*. Defendant argues, "Iron is specifically provided for in part 2 of schedule 6; therefore, defendant contends, iron is not included in schedule 4 and plaintiff's claim is without merit." (Defendant's brief, p. 18) However, since the exclusionary language in question is pegged to Part 2 of TSUS Schedule 6 defendant cannot be seriously contending that *all* iron, including the iron fragments at bar, is included in Part 2B of TSUS Schedule 6, and at the same time press for classification of the subject merchandise under the residual "basket" provision (item 657.20 of Part 3G of TSUS Schedule 6), inasmuch as residual classification can only be resorted to under Part 3G in the absence of a more specific classification under Part 2B.

In the court's opinion the exclusionary language in headnote 1(iii) to TSUS Schedule 4 goes no further than to provide a deterrent against dual classification of metal actually provided for and covered in Part 2 of TSUS Schedule 6. As previously indicated herein provision has not been made in Part 2B of TSUS Schedule 6 for iron flakes or fragments or for *unwrought* iron. Iron fragments are, however, described by the language "chemical elements" appearing in item 415.50 under Part 2A of TSUS Schedule 4. Thus, an exception which carves out of a statute something ordinarily included within its purview must be strictly construed. *Goat and Sheepskin Import Co. v. United States*, 5 Ct.Cust. Appls. 178, 180, T.D. 34254 (1914). As so construed, it follows that the iron at bar is not within the exception described in headnote 1(iii) to TSUS Schedule 4 inasmuch as it is not provided for in Part 2 of TSUS Schedule 6 to which headnote 1(iii) is directed.

The court concludes, therefore, that the imported iron fragments are properly classifiable as claimed under TSUS item 415.50. And in view of this conclusion the court does not reach plaintiff's alternative claim for classification of the iron under the TSUS basket clause in item 799.00. Plaintiff's claim is sustained. And judgment will be entered herein accordingly.