The UNITED STATES, Appellant,

v.

A. JOHNSON & CO., INC., Appellee.

**Customs Appeal No. 76–29.**

United States Court of Customs and Patent Appeals.

Aug. 4, 1977.

Barbara Allen Babcock, Asst. Atty. Gen., David M. Cohen, Chief, Customs Section, Washington, D. C., Alan L. Langus, New York City, for the United States.

Rivkin, Sherman & Levy, Washington, D. C., attorneys of record, for appellee; Joseph S. Kaplan, Dorothy P. Watson, New York City, of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN, LANE and MILLER, Associate Judges.

RICH, Judge.

This appeal is from the judgment of the United States Customs Court, 76 Cust.Ct. 155, C.D. 4650, 417 F.Supp. 1026 (1976), sustaining consolidated protests by the importer, A. Johnson & Co., Inc. (Johnson), to the classification of electrolytic iron in flake form imported from Japan. We reverse and remand.

The imported merchandise is invoiced, inter alia, as "Mairon Electrolytic Iron Flake," "Mairon" being a proprietary name by which we shall hereinafter identify the merchandise imported. Mairon is produced

from a solid, zinc-ore residue by reducing the iron content thereof to molten pig iron, casting the pig iron to form an iron anode, and electrolyzing the anode in an electrolytic cell having a stainless steel cathode. During electrolysis, the relatively impure iron anode is dissolved and its iron content is plated out in highly pure form on the cathode. The pure iron plating is removed from the cathode and physically broken up to produce Mairon, an iron product of more than 99.9% purity in the form of flat, irregular fragments generally less than two inches across and about one-fifth of an inch thick. Mairon's high purity makes it particularly useful in alloying applications employing vacuum or other melting techniques which do not permit further purification.

The Mairon flake in issue was exported from Japan in 1969 and 1970 and was classified in liquidation under item 657.20 of the Tariff Schedules of the United States (TSUS), as modified by T.D. 68–9, as other articles of iron dutiable, depending on date of entry, at 13 or 15 percent ad valorem. Johnson contends that Mairon is a basic shape or form of iron rather than an "article of iron," the latter being said to require some "advancement" over the former. Johnson additionally contends that iron in this particular basic form (flakes) is not provided for in Schedule 6, Part 2, of the TSUS covering "Metals, Their Alloys, and Their Basic Shapes and Forms." It is asserted that Mairon should be classified either under TSUS item 415.50, as modified by T.D. 68–9, as a chemical element in any physical form, or under the TSUS ultimate basket provision, item 799.00, as modified by T.D. 68–9. The importation would be dutiable, if either of Johnson's claims is upheld, at 7 or 8 percent ad valorem, depending on date of entry.

The Customs Court agreed with Johnson's analysis and found Mairon to be classifiable under item 415.50 without reaching the alternative claim for item 799.00.

Before considering the statutes, note should be taken of the fact that item 657.20, under which the iron flakes were classified, is in the metals and metal products schedule, 6, whereas item 415.50, which the Customs Court held appropriate, is in the chemical schedule, 4.

The relevant statutory provisions read (emphasis ours):

*Tariff Schedules of the United States*

SCHEDULE 6.—METALS AND METAL PRODUCTS.

\* \* \* \* \* \*

*Schedule 6 headnotes:*

\* \* \* \* \* \*

2. For the purposes of the tariff schedules, unless the context requires otherwise—

\* \* \* \* \* \*

(b) the term *"base metal"* embraces aluminum, antimony, arsenic, barium, beryllium, bismuth, boron, cadmium, calcium, chromium, cobalt, columbium, copper, gallium, germanium, hafnium, indium, *iron*, lead, magnesium, manganese, mercury, molybdenum, nickel, rhenium, the rare-earth metals (including scandium and yttrium), selenium, silicon, strontium, tantalum, tellurium, thallium, thorium, tin, titanium, tungsten, uranium, vanadium, zinc, and zirconium and base-metal alloys;

(c) the term "metal" embraces precious metals, *base metals*, and their alloys; \* \* \*

\* \* \* \* \* \*

PART 2.—METALS, THEIR ALLOYS, AND THEIR BASIC SHAPES AND FORMS

\* \* \* \* \* \*

*Subpart B.—Iron or Steel*

*Subpart B headnotes:*

1. *This subpart covers iron* and steel, their alloys, and their so-called basic shapes and forms \* \* \*.

\* \* \* \* \* \*

*Classified and urged by the United States:*

PART 3.—METAL PRODUCTS

\* \* \* \* \* \*

*Subpart G.—Metal Products Not Specially Provided For*

*Subpart G headnotes:*

1. This subpart covers only articles of metal which are not more specifically provided for elsewhere in the tariff schedules.

\* \* \* \* \* \*

*Articles of iron* or steel, not coated or plated with precious metal:

\* \* \* \* \* \* \*

Other articles:

\* \* \* \* \* \*

657.20   Other  .... 15% ad val. (for merchandise imported in 1969); 13% ad val. (for merchandise imported in 1970).

*Claimed and held below*:

### SCHEDULE 4.—CHEMICALS AND RELATED PRODUCTS

\* \* \* \* \* \*

*Schedule 4 headnotes*:

1. *This schedule does not include*—

\* \* \* \* \* \*

(iii) *metals provided for in part 2 of schedule 6.*

\* \* \* \* \* \*

### PART 2.—CHEMICAL ELEMENTS, INORGANIC AND ORGANIC COMPOUNDS, AND MIXTURES

*Part 2 headnotes*:

1. This part covers chemicals, *except those* provided for elsewhere in this schedule and those specially *provided for in any of the other schedules.*

\* \* \* \* \* \*

*Subpart A.—Chemical Elements*

Chemical elements in any physical form:

\* \* \* \* \* \*

415.50   Other  ..... 8% ad val. (for merchandise imported in 1969); 7% ad val. (for merchandise imported in 1970).

*Unadjudicated claim*:

### SCHEDULE 7.—SPECIFIED PRODUCTS; MISCELLANEOUS AND OTHER NONENUMERATED PRODUCTS

\* \* \* \* \* \*

### PART 14.—NONENUMERATED PRODUCTS

Any article, not provided for elsewhere in these schedules:

\* \* \* \* \* \*

799.00   Other  .. [duty same as under item 415.50].

Resolution of the issue on appeal turns on the construction to be given Schedule 4, Headnote 1(iii). The Customs Court concluded that this headnote, keyed as it was to Schedule 6, Part 2, was merely a deterrent to dual classification, excluding from Schedule 4 only those basic shapes or forms of metals, including iron, actually *classifiable* in Schedule 6, Part 2. The holding below that the proper classification is under item 415.50 thus flowed naturally from the Customs Court's acceptance of Johnson's uncontroverted assertion that Mairon was not classifiable in Schedule 6, Part 2. The Government, while conceding, rightly or wrongly, the absence of a specific provision for iron flake in Schedule 6, Part 2, contends that Schedule 4, Headnote 1(iii) excludes from Schedule 4 *all forms* of any element regarded as a "metal" for purposes of Schedule 6, reference being made to Part 2 thereof solely by virtue of the complete listing therein of all elements so regarded.

Assuming, arguendo, that the Customs Court was correct in finding that Mairon is not an "article of iron," as that term is used in Schedule 6, Part 3, and that iron in flake form does not fall within any of the statutory descriptions in Schedule 6, Part 2, we are of the opinion that the Customs Court erred in its application of Headnote 1(iii).

The ambiguity of Headnote 1(iii) is manifest from the arguments of the parties. The phrase "metals provided for in part 2 of schedule 6" might be construed as meaning either chemical elements determined to be "metallic elements" for purposes of tariff classification in general and Schedule 6 in particular or as a narrower reference to those specific commodities actually *classifiable* in Schedule 6, Part 2. Such ambiguities are to be resolved by reference to the intent of Congress as it may be gleaned from the legislative history.

We look first to the *Tariff Classification Study*, Schedule 4 (1960), where it is stated:

At the time of publication of schedule 4, schedule 6 relating to metals and metal products had not been completed, and it had not been decided *which elements were to be covered as metallic elements in schedule 6* \* \* \*. [*Id.* at 55 (emphasis ours).]

It is then stated, with respect to Subpart A, of Schedule 4, Part 2, which covers "chemical elements in any physical form":

This subpart, however, does not cover any of the *elements* specifically provided for in schedule 6 which covers metals and metal products. [*Id.* at 56 (emphasis ours).]

When Schedule 6 was completed, the aforementioned decision as to which elements were to be regarded as "metallic elements" for classification purposes was finally made. The term "metal" was then defined, purportedly for purposes of all of the tariff schedules, in Schedule 6, Headnote 2, supra, as embracing the selected community of chemical elements including *iron*. In referring to this definition, the *Tariff Classification Study,* Schedule 6 (1960), states:

It is to be noted that not all *elements* known as metals are included in this schedule [6]. The alkali metals * * *, under the proposed provisions, would remain in the revised chemical schedule (proposed schedule 4). Likewise, *metallic chemical elements* (except thorium and uranium) and isotopes which are usefully radioactive are in proposed schedule 4. On the other hand, the proposed metals schedule includes as base metals certain *elements* which in some classification systems are regarded as non-metals, e. g., arsenic, boron, selenium, and silicon. [*Id.* at 2 (emphasis ours).]

Schedule 6, Part 2, purports to provide for "metals," presumably as above defined, "their alloys, and their basic shapes and forms." According to the explanatory notes:

This part covers precious metals and base metals, their alloys, and their so-called basic shapes and forms, *wrought and unwrought.* [*Id.* at 83 (emphasis ours).]

It is further stated:

Some of the recognized metals are not *named* in the metals schedule and *therefore* are classified in the chemicals schedule. At least one metal, silicon, though specifically named in the metals schedule, is classified in the chemicals schedule if in hyper-pure form. On the other hand, *other metals, even though in very pure form, are classified within the provisions therefor in the metals schedule.* [*Id.* at 86 (emphasis ours).]

Finally, with respect to Schedule 6, Part 2, it is stated:

The proposed provisions in part 2 are presented in an organized, systematic manner and *the subject matter is covered completely.* Part 2 is subdivided into 10 subparts. Subpart A covers precious metals and the remaining subparts cover base metals. * * * Headnote 2 of schedule 6 specifically *names each of the elements which is to be regarded as a base metal* and as a precious metal. All of the metals provided for in part 2 are included *even when they are chemically pure.* [*Id.* at 87–88 (emphasis ours).]

From this material, we draw the following conclusions: (1) the qualification of "metals" in Headnote 1(iii) by the phrase "provided for in part 2 of schedule 6" was occasioned by a desire to define a class of "metallic elements" for purposes of tariff classification which deviated somewhat from traditional technical concepts of such a class; (2) such a modified class of metallic chemical elements is defined both in the headnotes to Schedule 6 and by the classification provisions of Schedule 6, Part 2; (3) the class of metallic elements thus defined includes the chemical element iron; (4) Congress *intended* the class of metallic chemical elements defined in Schedule 6, Part 2, to be *exhaustively* covered thereby; and (5) as a corollary of that intention, Congress intended to exclude from Schedule 4 by the operation of Headnote 1(iii) *all forms* of any chemical element which was determined to be a "metallic element" for purposes of Schedule 6. The assumed failure of Congress to achieve the intended exhaustive coverage of iron in Schedule 6, Part 2, does not, in our opinion, vitiate the expressed parallel intention to exclude the element iron from Schedule 4.

We conclude, therefore, that the Customs Court erred in holding that Johnson had fulfilled its burden of proving that the claimed classification under item 415.50 is correct. Under this circumstance, the presumption of correctness of the original classification stands. 28 U.S.C. § 2635 (1970). *Atlantic Aluminum & Metal Distributors, Inc. v. United States,* 47 CCPA 88, C.A.D. 735 (1960). Accordingly, the judgment of the Customs Court is *reversed* and the case is *remanded* for a determination of the merits of any unadjudicated claimed classification.