58 CCPA

**COSTA INTERNATIONAL CORP.,**
Appellant,

v.

**The UNITED STATES, Appellee.**

**Customs Appeal No. 5370.**

United States Court of Customs
and Patent Appeals.

Dec. 10, 1970.

———◆———

Brooks & Brooks, New York City, attorneys of record, for appellant; Eugene F. Blauvelt, Gail T. Cumins, New York City, of counsel.

William D. Ruckelshaus, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Susan C. Cassell, New York City, for the United States.

Before RICH, ALMOND, BALDWIN, LANE, Judges, and McMANUS, Judge,

Northern District of Iowa, sitting by designation.

BALDWIN, Judge.

This appeal is from the decision and judgment of the Customs Court, Second Division,[1] which overruled the importer's protest against assessment of duty on certain merchandise classified under item 661.70 of the Tariff Schedules of the United States (TSUS) as industrial machinery for the treatment of materials by a process involving a change of temperature. The importer claims that the merchandise is dutiable at a lower rate under item 668.06, TSUS, as parts of machines for making paper.

The imported merchandise consists of parts of what is generally designated in the record and arguments as a "Madeleine System". It includes Madeleine rolls, and some accessories, such as brackets to install the rolls and some sections of ductwork. The evidence shows that the Madeleine System is used in the drying portion of a Fourdrinier type paper making machine.

From testimony submitted in the trial below, we elicit that, during the paper making process, the Fourdrinier machine provides a sheet of paper pulp with a high water content. This sheet, or web, is continuously and directly fed into the drying portion where it is passed over a series of steam-heated cylindrical drying rolls to eliminate most of the water. Moving felt bands are sometimes provided to hold the sheet against the drying rolls to facilitate extraction of the water from the sheet. In machinery utilizing the Madeleine System, these felt bands, which become wet in the operation just described, are passed over the Madeleine rolls for drying. These Madeleine rolls, which are installed between consecutive drying rolls, have openings through which hot air is passed radially outward through that part of the felt engaging the roll at each instant. The felt is thus dried by the hot air before it is again used to press the pulp sheet against

———

1.  62 Cust.Ct. 729, C.D. 3855 (1969).

a subsequent drying roll. The Madeleine rolls do not contact the pulp sheet at any time. Also, there is evidence that the hot air from the Madeleine rolls, after passing through the felt to dry it, helps to eliminate from the drying section some of the moist air resulting from the action of the drying rolls on the pulp sheet.

The pertinent portions of the statutory provisions involved are as follows:

Schedule 6, Part 4:

Subpart A.—Boilers, Non-Electric Motor and Engines, and Other General Purpose Machinery

Subpart A headnote:

1. A machine or appliance which is described in this subpart and also is described elsewhere in this part is classifiable in this subpart.

\* \* \* \* \* \*

Industrial machinery, plant, and similar laboratory equipment, whether or not electrically heated, for the treatment of materials by a process involving a change of temperature, such as heating, cooking, roasting, distilling, rectifying, sterilizing, pasteurizing, steaming, drying, evaporating, vaporizing, condensing, or cooling; instantaneous or storage water heaters, non-electrical; all the foregoing (except agricultural implements, sugar machinery, and machinery or equipment for the heat-treatment of textile yarns, fabrics, or made-up textile articles) and parts thereof:

\* \* \* \* \* \*

661.70 Other.......... 12.5% ad val.

\* \* \* \* \* \*

Subpart D.—Pulp and Paper Machinery; Bookbinding Machinery; Printing Machinery

Machines for making cellulosic pulp, paper, or paperboard; machines for processing or finishing pulp, paper, or paperboard, or making them up into articles:

668.00 Machines for making cellulose pulp, paper, or paperboard ..... 7% ad val.

\* \* \* \* \* \*

Parts of the foregoing machines:

\* \* \* \* \* \*

Other:

668.06 Parts of machines for making cellulosic pulp, paper, or paperboard ........... 7% ad val.

The government apparently does not contest that the importations are described in item 668.06 as parts of machines for making paper. Assuming for present purposes that such is the case, the issue breaks down into two elements. These are

(1) Whether the importations are also described in item 661.70 (as classified) and

(2) Whether the importations fall within the scope of above-quoted Headnote 1, Schedule 6, Part 4, Subpart A, which provides for Subpart A of Schedule 6, Part 4 to invade other subparts of that schedule and part, including Subpart D in which item 668.06 (claimed) falls.

The Customs Court found from the evidence that:

\* \* \* the imported material in particular, and the drier section in general, do treat materials by subjecting them to a change in temperature. In this instance the material being treated is the drier felt and the paper web or sheet.

The court then ruled that the case of American SF Products, Inc. v. United States, 61 Cust.Ct. 257, C.D. 3593 (1968), is controlling and that the importations are therefore classifiable under item 661.70. In reaching that conclusion, it stated:

Insofar as [it is] the contention of plaintiff that the headnote of subpart A, *supra*, covers only machines and appliances and not parts, we are in total agreement. As indicated, *supra*, this court and the Court of Customs and Patent Appeals have held that no one machine makes paper. An examination of plaintiff's exhibit 2 and the

diagram contained on page 2 of defendant's exhibit A makes it abundantly clear to us that the so-called Madeleine System is one of the machines utilized to make paper. It is admittedly a part of the dryer section of paper machinery, not in the sense of the term "part of a machine", but part of the section, to wit, one of the machines of the dryer portion of paper making. Even if we were not to consider the Madeleine System a machine, it actually falls within the common meaning of the term "appliance" which has among other meanings, equipment, accouterments, appurtenances, implements, devices, etc.

We also conclude that the classification of the importations under item 661.70 is correct, although our reasoning does not coincide precisely with that of the Customs Court. In the first place, we are inclined to agree with the importer that the "materials" which that item requires to be treated must be something other than a part of the machinery such as the drier felt. However, it is clear that that portion of the entire paper making machinery which drys the wet web or sheet coming from the web-forming section thereof in the present case—that is, the drying rolls, the drier felt, and the Madeleine System and associated parts—constitutes a drying section of the complete paper making assembly. The entire drying section obviously constitutes machinery for the treatment of material—in this case, the pulp sheet—by a process involving a change in temperature.

Of course, the importations, as parts of the Madeleine System, constitute but parts of the machinery constituting the drying section. However, item 661.70 specifically includes parts of the machinery or equipment described therein. The question whether the importations are

described in item 661.70 therefore must be answered in the affirmative.

The importer urges that Headnote 1, Subpart A, Part 4 of Schedule 6 "is not applicable to 'parts' of the machines and appliances provided for in Subpart A" and notes the Customs Court's agreement in the second quoted portion of its opinion, *supra*, that the headnote "covers only machines and appliances and not parts." While the court sets forth no reason for its conclusion on this point, the importer bases its position largely on the absence of the words "and parts thereof" after "machine or appliance" in the headnote.

We find the importer's reasoning unpersuasive. The term "machine or appliance" appears in the headnote, *not in item 661.70*. The question therefore is not whether parts of a "machine or appliance" are classifiable under item 661.70. Instead, it is whether the "parts thereof," which item 661.70 includes along with the specified "industrial machinery, plant and similar laboratory equipment," are precluded from constituting, in the words of the headnote, "a machine or appliance which is described" in item 661.70 of Subpart A. We think it obvious that the omission from the headnote of words specifically including *parts* of a "machine or appliance" is no indication that articles which meet the description of "parts thereof" under item 661.70 are not subject to the provisions of the headnote.[2]

In short, we are satisfied that the present "parts" of the "machinery" and "equipment", which meet the requirements for classification in Item 661.70, are covered by the term "machine or appliance" in headnote 1. We point out that that term appears to have been selected not just for its applicability to the merchandise and parts of Item

2. This conclusion is in conformity with the decision of the Customs Court in American SF Products, Inc. v. United States, *supra*, the case which the court found controlling here. In that case, merchandise in the form of *parts* (although it appears no issue as to "parts" was raised) of a drier used in making paper were held dutiable under item 661.70 instead of item 668.06 because of the invasionary effect of the here-involved headnote 1 to Subpart A. See also Amalgamated Sugar Co. v. United States, 60 Cust.Ct. 268. C.D. 3361 (1968).

661.70, but also to all the diverse other merchandise, and "parts thereof", described in other items in Subpart A of Part 4 of Schedule 6,[3] to all of which the headnote applies.

The importer refers to certain aspects of legislative history as demonstrating "that TSUS Item 661.70 was not intended to provide for paper-making machinery or parts of such machinery" but this argument also fails to convince us of error in the Customs Court's judgment. In the first place, the evidence advanced on that point is less than persuasive. But what is more important, the language of the statute makes it clear that the invasionary headnote to

Subpart A is applicable to all other subparts of Part 4, including Item 668.06 for parts of papermaking machines. Since we are convinced that the instant imported merchandise otherwise meets the requirements for classification in Item 661.70, we cannot permit the clear meaning of the statutory language to be overcome merely by the showing of a possibly contrary legislative. intent. American Customs Brokg. Co. Inc. v. United States, Cust. & Pat.App., 433 F. 2d 1340, decided by this court on December 3, 1970.

The judgment of the Customs Court is affirmed.

Affirmed.

3. Other merchandise provided for in Subpart A includes steam engines, internal combustion engines, air and vacuum pumps and compressors, air-conditioning machines, centrifuges, weighing machinery and scales, and mechanical appliances for spraying liquids or powders.