ORDERED, ADJUDGED AND DECREED that these actions are dismissed for lack of jurisdiction.

(C.D. 4679)

JOHN V. CARR & SON, INC. *v.* UNITED STATES

104

Court Nos. 70/5763, etc.

Port of Detroit

(Decided December 21, 1976)

*Cross, Wrock, Miller & Vieson* (*Nathan B. Driggers* and *William D. Belski* of counsel) for the plaintiff.

*Rex E. Lee*, Assistant Attorney General (*Joseph I. Liebman* and *Ira J. Grossman*, trial attorneys), for the defendant.

MALETZ, Judge: This action comprises seven consolidated protests which raise the question as to the proper tariff classification of plastic pipe flanges imported from Canada in 1969 and 1970. The merchandise was classified by the government under item 770.10 of the Tariff Schedules of the United States, as modified by T.D. 68–9, as articles not specially provided for, wholly or almost wholly of reinforced or laminated plastics, other, and assessed duty of 16 cents per pound plus 13.5 percent ad valorem or 14.5 cents per pound plus 11.5 percent ad valorem, depending upon the date of entry.

Plaintiff contends that the imported flanges are properly dutiable under item 774.60, as modified by T.D. 68–9, as articles not specially provided for, of rubber or plastics, other, at the rate of 13.5 percent or 11.5 percent ad valorem, depending upon the date of entry.

The pertinent provisions of the tariff schedules are as follows:

Classified under:

Schedule 7, Part 12, Subpart A

Subpart A headnotes:

\*　　\*　　\*　　\*　　\*　　\*　　\*

2. For the purposes of the tariff schedules, the term "reinforced or laminated plastics" means—

\*　　\*　　\*　　\*　　\*　　\*　　\*

(ii) rigid plastics comprised of imbedded fibrous reinforcing material (such as paper, fabric, asbestos, and fibrous glass) impregnated, coated or combined with plastics usually by the application of heat or heat and low pressure.

\*　　\*　　\*　　\*　　\*　　\*　　\*

770.10 Articles not specially provided for wholly
 or almost wholly of reinforced or lami-
 nated plastics:

 \* \* \* \* \* \* \*

 Other_____ 16¢ per lb.+
 13.5%
 ad val.
 [1969]
 14.5¢ per
 lb.+
 11.5% ad
 val. [1970]

Claimed under:

Schedule 7, Part 12, Subpart D

 \* \* \* \* \* \* \*

774.60 Articles not specially provided for, of
 rubber or plastics:

 \* \* \* \* \* \* \*

 Other_____ 13.5% [1969]
 11.5% [1970]

Against this statutory background, there are two issues in the case: (1) whether the imported flanges are comprised of "imbedded *fibrous* reinforcing material" within the meaning of headnote 2(ii) of schedule 7, part 12, subpart A, *supra;* and (2) whether the foregoing headnote excludes from its scope articles *not* produced by the application of heat and low pressure. As to these issues, plaintiff contends that chopped strands of fiber glass which are used in the manufacture of the flange to reinforce the plastic are *not* a *fibrous* material. Plaintiff further argues that powdered asbestos which is used in the manufacture of the flanges provides no reinforcement to the plastic and is thus not a reinforcing material within the meaning of headnote 2(ii). Finally, plaintiff insists that since the imported flanges are always made with the application of heat and *high* pressure, i.e., pressure between 1,000 and 4,000 pounds per square inch, the flanges do not come within the scope of headnote 2(ii).

The record consists of the testimony of three witnesses for plaintiff,[1] two for defendant,[2] and 22 exhibits. The record shows that the flanges were produced in Canada by Protective Plastics, Limited, and imported into the United States by plaintiff as customhouse broker. The flanges ranged in size from ¾ to 24 inches in diameter and were used mainly to

---

[1] Plaintiff called Paul Szasz, president of Protective Plastics, Limited, the manufacturer of the importations; Charles H. Angell, a consultant on reinforced plastics; and Derek E. Fiddes, sales manager for Protective Plastics, Limited.

[2] Testifying for defendant were Carl H. Luther, a technical service engineer in the fiber glass division of PPG Industries, a leading producer of domestic fiber glass; and Irving Sporn, chief chemist of the physical testing and inorganic branch of the United States Customs Service Laboratory in New York City.

connect reinforced plastic pipe and to serve as nozzles and flanged connections to other reinforced plastic equipment.

The flanges were manufactured from a mixture of polyester resin, chopped fiber glass strands, asbestos and other chemicals. Initially benzol peroxide, a catalyst, and stabilizer chemicals were added to the polyester resin, and these ingredients were subjected to a mechanical mixing process. Color pigments and asbestos powder were then added to the mixture and finally, while the mixture was still in motion, fiber glass chopped strands were added until the mix had a dough-like consistency. This mix was hand-packed into the female die of a molding press. Both the male and female portions of the die were then heated to between 280° and 320° Fahrenheit and the press was hydraulically activated for a preset time compressing the substance at a pressure which ranged between 1,000 and 4,000 pounds per square inch. When the press opened, the operator removed the rigid cured flange which had been formed. The flange was never made by the application of heat alone, and pressures between 1,000 and 4,000 pounds per square inch were always used in conjunction with the heat. The use of pressures of that magnitude is now common in the reinforced plastics industry.

The chopped strands of fiber glass which were added to the polyester resin consisted of many parallel monofilaments or fibers of glass that individually measured about one-hundred thousandths of an inch in diameter. Each strand contained from 50 to 400 individual fibers which could be separated from one another. The chopped strands were made from continuous fiber glass strands by cutting these strands at predetermined lengths, e.g., ¼- or ½-inch strands.

Plaintiff's witness Angell testified that the chopped strands were not fibrous. In his opinion, to be fibrous a material must have fibers that extend in more than one direction and thus are randomly arranged. Hence, he concluded that the chopped strands were not fibrous because all the fibers within a given strand were parallel. Plaintiff's witness Szasz agreed that the chopped strands were not fibrous on the ground that they were individual loose strands rather than strands which were matted or bonded together in a random fashion.

In contradistinction, both witnesses for defendant testified that the terms fiber glass and fibrous glass are synonymous and that chopped strands are fibrous because they are composed of many individual filaments or fibers. Defendant's witness Luther further noted that the fibrous nature of the chopped strands can be revealed by twisting a single strand in one's hand and pulling the fibers apart. He emphasized that fibrous glass can be composed of parallel as well as nonparallel fibers.

In sum, plaintiff, while conceding that chopped strands of fiber glass are reinforcing material, maintains that in their common meaning they do not constitute a *fibrous* reinforcing material on the ground that the fibers are parallel rather than randomly arranged. Defendant, on the other hand, contends that in their common meaning the terms fibrous glass and fiber glass are interchangeable. For the reasons that follow, the court must agree with the defendant's position.

The law governing the common meaning of tariff terms is well stated in Sturm, *A Manual of Customs Law* (1974), p. 202:

> Tariff terms are to be construed in accordance with their common and commercial meanings, which are presumed to be the same. *Meyer & Lange et al.* v. *United States*, 6 Ct. Cust. Appls. 181, T.D. 35436 (1915); *August Bentkamp* v. *United States*, 40 CCPA 70, 78, C.A.D. 500 (1952); *United States* v. *M. & D. Miller, Inc.*, 41 CCPA 226, C.A.D. 556 (1954); *United States* v. *Victoria Gin Co., Inc. et al.*, 48 CCPA 33, C.A.D. 759 (1960); *Floral Arts Studio et al.* v. *United States*, 46 CCPA 21, C.A.D. 690 (1958); *United States* v. *C. J. Tower & Sons*, 48 CCPA 87, C.A.D. 770 (1961). Congress is presumed to know the language of commerce, and to have framed tariff acts so as to classify commodities according to the general usage and denomination of the trade. *Nylos Trading Company* v. *United States*, 37 CCPA 71, C.A.D. 422 (1949).
>
> In the interpretation of tariff laws, words are to be taken in their commonly received and popular sense, in the absence of a contrary legislative intent, or proof of a commercial designation, if that differs from the ordinary understanding of the term. *Hummel Chemical Co.* v. *United States*, 29 CCPA 178, 183, C.A.D. 189 (1941); *F. F. G. Harper Co.* v. *United States*, 29 CCPA 268, 271, C.A.D. 201 (1942); *Armand Schwab & Co., Inc.* v. *United States*, 32 CCPA 129, 132, C.A.D. 296 (1945); *United States* v. *Esso Standard Oil Co.*, 42 CCPA 144, 151, C.A.D. 587 (1955); *United States* v. *Tropical Craft Corp.*, 42 CCPA 223, C.A.D. 598 (1955); *United States* v. *C. J. Tower & Sons*, 44 CCPA 1, 4, C.A.D. 626 (1956); *Trans-Atlantic Company* v. *United States*, 60 CCPA 100, C.A.D. 1088, 471 F. 2d 1397 (1973).

With regard to whether Congress intended the terms fibrous glass and fiber glass to be used interchangeably, it is not without significance that headnote 1(iii) of schedule 7, part 12, subpart A reads:

1. This subpart does not cover—

\* \* \* \* \* \* \*

(iii) certain products of *fibrous glass* provided for in part 3A of schedule 5. [Emphasis added.]

Turning to part 3A of schedule 5, the following types of *fibrous glass* are provided for in item 540.71 of that part:

> Glass fibers in bulk; glass fibers in the form of mats, batts, blankets, felts, pads, casings and boards, all the foregoing, of a

density not over 25 pounds per cubic foot, whether or not coated, impregnated, or bonded with glue, plastics, or other substances, or lined, backed, or supported with paper, paperboard, fabrics or similar material, or with metal mesh or foil; glass-fiber filters, with or without their frameworks or supports; and *articles not specially provided for, of glass fibers.* [Emphasis added.]

Since the tariff schedules thus cross reference all articles of glass fibers as fibrous glass, it is evident that the legislative intent was to use the terms fiber glass and fibrous glass interchangeably. This comports with the common meaning of the term as it appears in various lexicographic authorities. For example, *Webster's Third New International Dictionary* (1963) defines *fiber glass* as (p. 843):

glass in fibrous form used in making various products (as glass wool, yarns, textiles); for example, *fiber glass* insulation, a fiber glass boat—called also *fibrous glass, spun glass.*

The same edition of *Webster's* defines "fibrous glass" as "FIBER GLASS." *Id.* at 844.

In addition, the *Encyclopedia of Basic Materials for Plastics* contains a table of "forms of *fibrous glass*," which lists *"chopped strands"* along with the various other forms. The *Encyclopedia of Basic Materials for Plastics*, p. 253 (Simonds and Church ed. 1967). [Emphasis added.]

Defendant's witnesses agreed with the above definitions and testified that the term fibrous glass and fiber glass are synonymous in the industry.[3] At the very least, this testimony supports the presumption that the commercial meaning of the term "fibrous glass" is the same as the common meaning.

Plaintiff, however, relies on the doctrines of *noscitur a sociis* and *ejusdem generis.* It points out that "paper" "fabric," and "asbestos" are generally made up of randomly arranged fibers and asserts that these rules require that "fibrous glass," the remaining example of imbedded fibrous reinforcing material contained within headnote 2(ii), be made up of randomly arranged fibers as well. However, plaintiff overlooks the fact that these rules of construction may only be applied where they are needed to resolve an ambiguity. The rules are not applicable where the legislative intent as to the meaning of a word or phrase is clear; like all principles of construction, they are to be used only as an instrumentality for determining the legislative intent in cases where it is in doubt. *J. F. Goldkamp & Co.* v. *United States,* 39 Cust. Ct. 420, 421, Abs. 61194 (1957); *Nomura (America) Corp.* v. *United States,* 62 Cust. Ct. 524, C.D. 3820, 299 F. Supp. 535 (1969), *aff'd,* 58 CCPA 82, C.A.D. 1007, 435 F. 2d 1319 (1971).

---

[3] Defendant's witness Luther added that for a time the term "fibrous glass" was used in the industry in order to avoid using the term "fiberglas" which was a trademark name belonging to the Owens-Corning Fiberglas company.

See also, e.g., *United States* v. *Simon Saw & Steel Co.*, 51 CCPA 33, 37, C.A.D. 834 (1964); *United States* v. *Urdika Wire Die Works*, 19 CCPA 182, T.D. 45292 (1931). There is no ambiguity in this case with respect to the meaning of "fibrous glass." It has been shown above that chopped fiber glass strands are "fibrous glass" according to all available authority. In these circumstances, plaintiff may not resort to the doctrine of *noscitur a sociis* or *ejusdem generis* to create an artificial distinction between parallel fibers and non-parallel fibers in order to defeat the common meaning of "fibrous glass."

In summary, the evidence overwhelmingly supports defendant's contention that chopped fiber glass strands are a form of fibrous glass and that the imported merchandise contains fibrous glass reinforcing material.[4]

Finally, plaintiff points out that the imported flanges are subjected to pressures of from 1,000 to 4,000 pounds per square inch during their manufacture—which pressures are alleged to be high. In this context, plaintiff argues that headnote 2(ii) of schedule 7, part 12, subpart A, *supra, requires* that an article be *usually* produced by the application of heat and low pressure in order to come within that headnote's definition of reinforced plastic. This argument, however, is without merit as the very wording of the headnote clearly demonstrates. The headnote reads:

> (ii) rigid plastics comprised of imbedded fibrous reinforcing material (such as paper, fabric, asbestos, and fibrous glass) impregnated, coated or combined with plastics usually by the application of heat or heat and low pressure.

Plaintiff interprets the headnote to mean that any particular article covered thereby *must be usually* made with heat and low pressure. What this language really amounts to, however, is a statutory recognition of the fact that reinforced plastics *are usually* formed by the application of heat or heat and low pressure. Implicit in the language of the headnote is the further recognition that reinforced plastics are not always formed under low pressure. It cannot be seriously contended that Congress would, as plaintiff argues, draft a statute which bases classification on whether an article is "usually" or "sometimes" or "rarely" manufactured in a given way, since such a statute would necessarily be incurably nebulous and imprecise.

It is also interesting to note that although plaintiff argues that all articles covered by item 770.10 *must* be produced by the application of heat and low pressure, plaintiff's exhibit 2 (R. 46)—which plaintiff

---

[4] In view of the conclusion that the chopped glass strands are a form of fibrous glass reinforcing material, it is unnecessary to reach the question as to whether or not the asbestos powder is likewise a fibrous reinforcing material.

claims is illustrative of the type of article covered by item 770.10—is produced by the application of low pressure and *no* heat (R. 162). Thus, plaintiff's exhibit 2, without more, refutes plaintiff's argument.

For the foregoing reasons, it is concluded that the flanges in issue were properly classified by the government under item 770.10 as other articles not specially provided for, wholly or almost wholly of reinforced or laminated plastics. Plaintiff's claim is overruled and judgment will be entered accordingly.