SUPERMARKET SYSTEMS, U.S., INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 86–10–01343

(Decided October 27, 1989)

*Stack & Filpi Chartered,* (*John J. Kakacek*), for the plaintiff.

*Stuart E. Schiffer,* Acting Assistant Attorney General, *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, United States Department of Justice, Commercial Litigation Branch (*Michael P. Maxwell*) for the defendant.

## OPINION

CARMAN, *Judge:* Plaintiff Supermarket Systems, U.S., Inc. contests the denial by the United States Customs Service (Customs) of a protest filed under sections 514 and 515 of the Tariff Act of 1930, as amended, 19 U.S.C. §§ 1514, 1515 (1982 & Supp. V 1987). The protest challenged the classification of plaintiff's imported merchandise. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(a) (1982).

On the basis of the evidence presented at trial, the arguments of the parties and all other papers and proceedings had herein this Court determines that Customs erroneously classified the merchandise in issue under the Tariff Schedules of the United States (TSUS) item 653.00 for other structures and parts of structures and holds that the appropriate classification is under TSUS item 657.25 the basket provision for articles of iron or steel, not coated or plated with precious metal.

## BACKGROUND

This case concerns the classification of Openmatic automatic entry gates which were imported from France to the port of Chicago, Illinois on July 31, 1985. Openmatics are steel devices equipped with a gate arm and an alarm. They are placed at the entrance way of public buildings, such as retail stores, libraries and airports to prevent pilferage by controlling ingress and egress.

The devices consist of two railings, each of which are created by two columns supporting a horizontal bar. The two railings which are not attached to each other, form a corridor which leads towards a cylindrical steel housing. This housing contains the working and power mechanism and a pivoting gate arm. The gate arm is normally equipped with signs that say "Welcome" on the entrance side, and "Emergency Exit Only" on the exit side. One of the columns supports a railing containing a photo-electric cell. An infra-red beam, generated by the photo-electric cell, is focused on a reflector. When a person approaches the entry gate the beam is broken, the motor switched on, and the gate arm swings open. When the gate arm is moved approximately six inches in the exit direction, an

alarm is activated, alerting establishment personnel to unauthorized exits.

Customs classified the merchandise under TSUS 653.00 as "other structures and parts of structures * * * of iron or steel * * * Other," and assessed a duty of 6.7% *ad valorem*. Plaintiff contests this classification and asserts the merchandise is more specifically described under TSUS item 685.70 as a "other sound or visual signalling apparatus * * * electrical, and parts thereof * * * Other * * *," assessed at a rate of 3 percent *ad valorem*. Alternatively, plaintiff claims that the merchandise should be classified under TSUS item 683.32 "other electro-mechanical appliances * * * with self contained electric motors, of the types used in the household, hotels, restaurants, offices, schools or hospitals * * * Other," at a rate of 4.7 percent *ad valorem*, or under TSUS item 727.70 "furniture * * * Other * * *," at a rate of 5.5 percent *ad valorem*.

If Customs' classification of the Openmatic as a structure under item 653.00, TSUS, is overruled, Customs asserts as an alternative, that the merchandise should be classified under item 657.25 "articles of iron or steel, not coated or plated with precious metal * * * Other * * *," at a rate of 6.7 percent *ad valorem*.

Plaintiff seeks relief in the form of reclassification of the Openmatic under any of its alternatives and a refund of all excess customs duties.

Customs seeks the affirmance of its original classification under 653.00, TSUS or in the alternative classification under the basket provision, TSUS item 657.25.

The following are the pertinent provisions of the tariff schedule.

*Classified under:*

Schedule 6, Part 3, Subpart F, item 653.00 which provides in pertinent part:

> Hangars and other buildings, bridges, bridge sections, lockgates, towers, lattice masts, roofs, roofing frameworks, door and window frames, shutters, balustrades, columns, pillars, and posts, and other structures and parts of structures, all the foregoing of base metal:
> Of iron or steel:
>    *       *       *       *       *       *       *
>    Other ....................................... 6.7% ad val.

*Alternatives claimed by plaintiff:*

A. Schedule 6, Part 5, item 685.70 provides in pertinent part:

> Bells, sirens, indicator panels, burglar and fire alarms, and other sound or visual signalling apparatus, all the foregoing which are electrical, and parts thereof * * *
>    *       *       *       *       *       *       *
>    Other .......................................... 3% ad val.

*B.* Schedule 6, Part 5, item 683.32 provides in pertinent part:

>   Vacuum cleaners, floor polishers, food grinders, and mixers, juice extractors and other electro-mechanical appliances, all the foregoing with self-contained electric motors, of types used in the household, hotels, restaurants, offices, schools, or hospitals (but not including factory or other industrial appliances or electro-thermic appliances), and parts thereof:
>   \*       \*       \*       \*       \*       \*       \*
>   Other ...............................................
>   \*       \*       \*       \*       \*       \*       \*
>   Other electro-mechanical appliances ........... 4.7% ad val.

*C.* Schedule 7, Part 4, item 727.70 provides in pertinent part:

>   Furniture, and parts thereof, not specifically provided for:
>   \*       \*       \*       \*       \*       \*       \*
>   Other ....................................... 5.5% ad val.

*Customs' alternative classification:*

Schedule 6, Part 3, Subpart G, item 657.25 provides in pertinent part:

>   Articles of iron or steel, not coated or plated with precious metal:
>   \*       \*       \*       \*       \*       \*       \*
>   Other articles:
>   \*       \*       \*       \*       \*       \*       \*
>   Other
>   \*       \*       \*       \*       \*       \*       \*
>
>   Other.................................... 6.7 ad val.

### CONTENTIONS OF THE PARTIES

Plaintiff contends that the Openmatic was improperly classified as "structures and parts of structures." Plaintiff asserts the merchandise is not a structure because it will not sustain a heavy load, and it is not a part of a structure because each section is independent and free standing. Plaintiff contends that even if the Openmatic were a structure or part of a structure, other TSUS items more specifically describe it. Accordingly, plaintiff sets forth three classifications, any of which, plaintiff maintains, are more specific than TSUS item 653.00.

Plaintiff contends that the Openmatic should be classified as "other sound or visual signalling apparatus" under TSUS item 685.70 because its primary function is that of an alarm which deters unauthorized exits. Plaintiff also asserts the Openmatic is properly classifiable under the provision for "other electro-mechanical appliances \* \* \* of types used in the household, hotels, restaurants, offices, schools, or hospitals \* \* \*," TSUS item 683.32, because it an electro-mechanical device suitable for use in hospitals and schools. Lastly plaintiff contends TSUS item 727.70 for "furniture" is an ap-

propriate classification because the Openmatic is a movable article of utility used to equip a room.

Customs maintains that the merchandise has been properly classified as a structure or part of a structure. Customs asserts an article needs only to be self-supporting to be classified as a structure under TSUS item 653.00; it does not need to be load bearing. In addition, Customs asserts that Openmatic devices are comparable to gates and turnstiles which it claims are both commonly defined as structures.

Customs also argues that none of plaintiff's suggested classifications are correct. According to Customs, an Openmatic cannot be classified as a signalling apparatus because it is "more than" a sound or signalling apparatus. An Openmatic is not an electromechanical appliance because that term is limited to equipment that is capable of performing domestic chores. Finally, Customs contends an Openmatic is not furniture because furniture must be movable and directly beneficial to people in the room.

Customs argues, in the event this Court determines Customs improperly classified the Openmatic as a structure, the merchandise still cannot be classified under any of plaintiff's alternatives because it is more or other than any of the articles described therein. Therefore, while maintaining that the Openmatic was properly classified as a "structure" under TSUS item 653.00, Customs asserts as an alternative TSUS item 657.25. This basket provision for "articles of iron or steel" carries the same rate of duty as TSUS item 653.00, the Customs classification at issue.

### DISCUSSION

A presumption of correctness exists in favor of Customs' classification of an imported product and the burden of proof rests upon the party challenging the classification. 28 U.S.C. § 2639(a)(1) (1982); *Jarvis Clark Co.* v. *United States,* 2 Fed. Cir. (T) 70, 75, 733 F.2d 873, 878, *reh'g denied,* 2 Fed. Cir. (T) 97, 739 F.2d 628 (1984). This presumption of correctness pertains not only to Customs' final classification, but also to every element necessary to support that determination. *United States* v. *New York Merchandise Co. Inc.,* 58 CCPA 53, 58, 435 F.2d 1315, 1318 (1970); *Schott Optical Glass, Inc.* v. *United States,* 82 Cust. Ct. 11, 15, C.D. 4783, 468 F. Supp. 1318, 1320, *aff'd,* 67 CCPA 32, C.A.D. 1239, 612 F.2d 1283 (1979). In order to determine whether Customs' classification is correct, this Court must consider Customs' classification both independently and in comparison with the plaintiff's alternatives. *Jarvis Clark,* 2 Fed. Cir. (T) at 75, 733 F.2d at 878.

In determining whether Customs' classification of the Openmatic was correct, this Court must determine whether the term "structure" as used in TSUS item 653.00 was intended by Congress to encompass devices such as the Openmatic, since "it is well settled that tariff acts must be construed to carry out the intent of the legisla-

ture." *F. W. Myers, Inc.* v. *United States,* 12 CIT 566, Slip Op. 88–78 at 7 (June 16, 1988); *Nippon Kogaku (USA), Inc* v. *United States,* 69 CCPA 89, 92, 673 F.2d 380, 382 (1982).

The first place to look to establish the Congressional intent concerning the meaning of a word is to the statute itself. "Problems of statutory construction require the Court to first peruse the language employed by Congress in the statute and regard the intent of Congress as expressed in the plain meaning of the words." *E. C. McAfee & Co. A/C Rolykit Div. of Hagenmeyer (Canada) Ltd.* v. *United States,* 12 CIT 648, Slip Op. 88–93 at 9 (July 19, 1988) (quoting *Consumer Product Safety Comm'n* v. *GTE Sylvania,* 447 U.S. 102, 108 (1980)). Furthermore, it is well settled that the meaning of a particular tariff term is a question of law, while the determination of whether a particular item fits within that meaning is a question of fact. *Hasbro Industries, Inc.* v. *United States,* 879 F.2d 838, 840 (Fed. Cir. 1989); *Stewart-Warner Corp.* v. *United States,* 3 Fed. Cir. (T) 20, 22, 748 F. 2d 663, 664–65 (1984); *Daw Industries, Inc.* v. *United States,* 1 Fed. Cir. (T) 146, 147–48, 714 F.2d 1140, 1141–42 (1983).

"[I]f the meaning of a word in a tariff provision is in dispute, the correct meaning is to be determined from its common meaning, that is, from its commonly received and popular sense." *Schott Optical,* 82 Cust. Ct. at 16, 468 F. Supp. at 1321 (citations omitted). To ascertain the common meaning, in addition to relying upon its own understanding of the terms used, the court may consult dictionaries, lexicons, the testimony of record, and other reliable sources of information as an aid to its knowledge. *Pistorino & Co., Inc.* v. *United States,* 81 Cust. Ct. 37, 41, C.D. 4763, 461 F. Supp. 331, 334 (1978), *aff'd,* 66 CCPA 95, 599 F.2d 444 (1979); *Schott Optical,* 82 Cust. Ct. at 16, 468 F. Supp. at 1321; *United States* v. *C.J. Tower & Sons,* 44 CCPA 1, C.A.D. 626 (1956).

### 1. CUSTOMS' CLASSIFICATION

The principle question before this Court is whether the Openmatic is encompassed within the common meaning of the term "structure" in TSUS item 653.00. Both parties agree that Openmatic devices "have no load bearing function and they are not designed to sustain any load." Pre-Trial Order, Schedule C—Uncontested Facts. However, plaintiff asserts that the common meaning of the term structure includes a load bearing capability and since the Openmatic is not load bearing, it was incorrectly classified as a structure.

Customs asserts the term structure does not require objects to be load bearing, only that they support their own weight. Since the Openmatic is concededly self-supporting, Customs maintains it was properly classified as a structure.

In a series of cases Courts have struggled with the definition of structure. In *Simon, Buhler & Baumann (Inc.)* v. *United States,* 8 CCPA 273, T.D. 37,537 (1918), the Court stated:

Ordinarily speaking, "structure" carries with it the idea of size, weight, and strength, and it has come to mean anything composed of parts capable of resisting heavy weights or strains and artificially joined together for some special use. But however that may be, certain it is that the expression "structural shapes" does import to people in general a capacity to sustain heavy weights or to resist great tension or both * * *.

*Id.* at 276.

While recognizing that "a complete definition of 'structural' or 'structure' is not to be found," later courts have accepted the Court's definition in *Simon, Buhler & Baumann* as "an adequate point of departure." *United States* v. *Paul M.W. Bruckmann,* 65 CCPA 90, 93, C.A.D. 1121, 582 F.2d 622, 624 (1978); *see also, United States* v. *Winkler-Koch Engineering Co.,* 41 CCPA 121, 127, C.A.D. 540 (1953); *S.G.B. Steel Scaffolding & Shoring Co., Inc.* v. *United States,* 82 Cust. Ct. 197, 212, C.D. 4802 (1979).

*S.G.B. Steel Scaffolding* is illustrative of Court interpretations of the term structure. In that case, the merchandise in issue was a scaffolding system called a "shore frame system" used to support floors or canopies. Customs classified the merchandise as articles of iron or steel. S.G.B. contended they should have been classified as structures. The Court rejected the government's attempt to restrict the definition of structure and noted "the TSUS term 'structures' is a generic description * * *." 82 Cust. Ct. at 210. The Court further determined it could discern "no precise definition of the term 'structure.'" *Id.* at 211. Following appellate precedents, the Court concluded that construction of the generic term "structure" "remains simply a question of common meaning and each case must be decided on the basis of its own facts, technical and legislative." *Id.*

In an attempt to aid this Court, plaintiff refers to a dictionary definition of structure from the *McGraw-Hill Dictionary of Scientific and Technical Terms* 1437 (1974), which includes in its definition of structure, "Something, as a bridge or a building, that is built or constructed and *designed to sustain a load.*" (Emphasis added). Customs presents several definitions none of which explicitly requires a structure to be load bearing.[1] However, it is equally apparent to

---

[1]Customs' three dictionary definitions of structure are set out:

Structure:
1. Something made up of a number of parts that are held or put together in a particular way. 2. The way in which parts are arranged or put together to form a whole. 3. The interrelation of parts or the principle of organization in a complex entity. 4. Relatively intricate or extensive organization: *an elaborate electric structure.* 5. Something constructed, esp. a building or part.
*American Heritage Dictionary* 1208 (2d college ed. 1982).

Structure:
1. manner of building, constructing, or organizing. 2. something built or constructed, as a building or dam. 3. the arrangement or interrelation of all the parts of a whole; manner of organization or construction [the *Structure* of the atom. The *Structure* of society] 4. something composed of interrelated parts forming an organism or an organization.
*Webster's New World Dictionary* 1413 (2d ed. 1976).

Structure:
1. mode of building, construction, or organization; arrangement of parts, elements or constituents: *a pyramidal structure.* 2. something built or constructed, as a building, bridge, dam, etc. 3. a complex system considered from the point of view of the whole rather than any single part: *the structure of modern science.* 4. anything composed of parts arranged together in some way; an organization. 5. the relationship or organization of the component parts of a work of art or literature: *the structure of a poem.*

this Court that none of these definitions suggest the common meaning of the term structure is characterized by the capability of objects to support themselves.

Trial testimony also failed to clarify the common meaning of the term structure. Plaintiff's sole witness and expert, Mr. Alford Johnson, Vice President of Supermarket Systems, U.S., Inc., stated on direct examination that based upon his experience it was his expert opinion the "Openmatic device is not a 'structure' because it bears no load and it is not designed to bear any load." Trial Transcript (Tr.) at 13. Throughout his direct testimony Mr. Johnson generally agreed with plaintiff's definition of structure as requiring some load bearing capability. However, on cross-examination Mr. Johnson also generally agreed with the definitions of structure offered by Customs which lacked a load bearing component. Tr. at 40–41.

While this Court is mindful of the requirement to look to the text of a statute to find its plain meaning, it appears the testimony offered at the trial, dictionary definitions and case law are unclear as to the common meaning of the term structure for Customs classification purposes. Where there is ambiguity and the intent of Congress is not readily apparent, the Court should look to rules of statutory construction to see if they provide interpretation of the meaning of the statute. *DRI Industries, Inc.* v. *United States,* 11 CIT 97, 657 F. Supp. 528, 532, *aff'd,* 832 F.2d 155 (Fed. Cir. 1987).

Customs urges this Court to interpret the meaning of the term "structure" by applying the *ejusdem generis* rule of statutory construction. *Ejusdem generis* stands for the proposition that "where particular words of description are followed by general terms, the latter will be regarded as referring to things of a like class with those particularly described." *C.J. Tower,* 44 CCPA at 5. *Ejusdem generis* is "applicable whenever a doubt arises as to whether a given article not specifically named in the statute is to be placed in a class of which some of the individual subjects are named." *DRI Industries,* 11 CIT at 101, 657 F. Supp. at 532 (quoting *United States* v. *Damrak Trading Co., Inc.,* 43 CCPA 77, 79, C.A.D. 611 (1956)). It may not be resorted to when there is no doubt as to the meaning of the term. *John V. Carr & Son, Inc.* v. *United States,* 77 Cust. Ct. 103, 108, C.D. 4679 (1976).

Application of *ejusdem generis* requires that the imported merchandise possess the characteristics which unite the general exemplars. It is "inapplicable where general words are associated with specific designations of unlike genera. In such an instance, the general words are deemed to remain unaffected by their association with the specific designations." *C.J. Tower,* 44 CCPA at 5.

---

Random House Dictionary of the English Language, see, Brief for the United States, the Defendant (hereinafter Defendant's Brief) Addendum.

Customs argues that "load bearing" is not the common characteristic of the exemplars because neither shutters nor balustrades support anything more than their own weight. Instead, Customs contends that "self-supporting" is the unifying characteristic.

In this case, this Court finds application of *ejusdem generis* inappropriate. There does not appear to be a common characteristic which unites the exemplars. While most of the exemplars are designed to support great weight or stress (e.g. hangars, buildings, bridges, towers, roofs, columns, pillars, etc.), other of the exemplars are arguably self-supporting (e.g. shutters and balustrades). Yet, even those articles in the latter group are capable of supporting weights and stresses other than their own, depending upon the context of their use. Shutters resist the stress of the wind, and balustrades can support the weight of persons leaning on them for balance and support. Tr. at 32. Additionally, it appears that items such as roofs, columns and pillars may not be capable of supporting their own weight depending on the type of construction they are used in or the stresses they are designed to withstand. In any event, there was no evidence introduced at trial as to the self-supporting qualities of these exemplars.

In this case it is uncontested that the Openmatic does not sustain, and was not designed to sustain, any load other than its own weight. Pretrial Order, Schedule C—Uncontested Facts; Tr. at 22–23, 31. It is also clear the Openmatic is free-standing, not part of any other structure. Tr. at 20–21.

On the basis of the facts this Court concludes that the Openmatic is not a structure or part of a structure within the meaning of TSUS item 653.00. This Court cannot discern how the Openmatic is of a like type or kind as any of the articles named in the statute.[2] Nevertheless, it is equally clear to this Court that Customs' classification of the Openmatic was erroneous, because even if it were properly considered a structure, it is clearly more than a structure, and for the reasons set out below, appropriately classified under the basket provision for articles of iron or steel not coated or plated with precious metal, TSUS item 657.25.

This Court holds that the plaintiff has overcome the presumption of correctness in favor of Customs' classification. The Openmatic devices were improperly classified as structures and parts of structures under TSUS item 653.00. This Court will now consider the proposed alternative classifications.[3]

---

[2]Additionally this Court observes that interpreting the term structure to mean articles which are self-supporting might result in turning TSUS item 653.00 into another basket provision because it would appear that most objects can sustain, at the least, their own weight. This would be an anomalous result contrary to other clear expressions of Congressional intent. As pointed out in *S.G.B. Steel Scaffolding,* "[o]ne of the major objectives of the drafters of the tariff schedules was to deemphasize the importance and restrict the scope of the 'basket' provisions." 82 Cust Ct. at 218 (citing Tariff Classification Study Submitting Report (1960), part II (E) (4), at 15–16; *United States* v. *A. Johnson & Co., Inc.,* 66 CCPA 35, C.A.D. 1218, 588 F.2d 297 (1978); *American Express Co.* v. *United States,* 61 Cust. Ct. 208, 213, C.D. 3573, 290 F. Supp. 778, 781–82 (1968), *aff'd,* 57 CCPA 100, C.A.D. 985, 426 F.2d 383 (1970)).

[3]Customs also contends that an Openmatic gate is a structure because it is like a gate or a turnstile, both of which it claims are defined as structures. However, even if gates were determined to be structures or parts of

## 2. Plaintiff's Proposed Alternative Classifications

Plaintiff urges upon this Court three alternatives classifications: sound or visual signalling apparatus (685.00 TSUS), electro-mechanical appliance (683.32 TSUS), or furniture (727.70 TSUS). Of these proposed classifications, plaintiff contends the TSUS item for sound or visual signalling apparatus is the most specific, furniture the least specific. The Court will address each of plaintiff's suggested alternatives in succession.

### A. *Sound or Visual Signalling Apparatus:*

Plaintiff claims the Openmatic should be classified as a sound or visual signalling apparatus under TSUS item 685.70. Plaintiff contends that the primary function of the Openmatic gate is signalling via the alarm component; its other components, the gate arm, motor housing and photo-electric cell, serve merely secondary, subordinate or incidental functions.

Customs asserts that the gate function of the Openmatic, controlling ingress and egress, not the alarm function, is the primary feature of the Openmatic. "The gate is its name and that is what works all day long every day. The alarm may go off once a month, but the gate is going to work every day for every single customer in the store, it is the primary feature." Tr. at 69. Customs further argues that the Openmatic is more than a sound or visual signalling apparatus, in that it is at least a multifunctional article. "The gate arm, motor, photo-electric cell, railings and housing are at least as significant as the alarm and plainly cause the Openmatic to be 'more or other than' signalling apparatus." Defendant's Brief at 17. Lastly, Customs contends that the Openmatic is not *ejusdem generis* with the exemplars in the classification.

The general rule for multifunctional articles is that "where an article is in character or function something other than is described by a specific statutory provision—either more limited or more diversified—and the difference is significant, it cannot find classification within such provision." *Robert Bosch Corp. et al.* v. *United States,* 63 Cust. Ct. 96, 103, C.D. 3881 (1969). However, "[w]here merchandise has a single primary function and an incidental, subordinate, or secondary function, it is classifiable on the basis of its primary design, construction, and function." *Ashflash Corp.* v. *United States,* 76 Cust. Ct. 112, 115–16, C.D. 4643, 412 F. Supp. 585, 587 (1976) (and citations therein).

In order to determine if an article is more than the one provided for in a particular tariff provision, it is necessary to ascertain the common meaning of the provision and compare it with the merchandise in issue. *E. Green & Son (New York), Inc.* v. *United States,* 59 CCPA 31, 34, C.A.D. 1032, 450 F.2d 1396, 1398 (1971). Rules ap-

---

structures, on the basis of the facts of this case, the Openmatic is clearly more than a gate and not properly classified under any of plaintiff's alternatives.

plying the "more than" doctrine are general and each case must be determined upon its own facts. *NEC America, Inc.* v. *United States,* 8 CIT 184, 191, 596 F. Supp. 466, 471 (1984) (citing *E. Green & Son,* 59 CCPA at 34, 450 F.2d at 1398). The question of whether a given function is secondary or co-equal with the primary one, is one of fact for the trial court to determine. *ASEA, Inc.* v. *United States,* 7 CIT 128, 131, 587 F. Supp. 1072, 1073–74, *aff'd,* 3 Fed. Cir. (T) 34, 748 F.2d 676 (1984); *Tridon, Inc.* v. *United States,* 5 CIT 167, 169 (1983); *F.W. Meyers,* 12 CIT at 574, Slip Op. at 14.

The central issue to be determined is whether there are any additional functions which significantly alter the Openmatic and turn it into something "more than" the article described in the statute, or whether any additional functions are simply improvements, or incidental and secondary features.

This Court determines on the basis of the evidence submitted that the Openmatic is primarily a pedestrian control device designed to deter unauthorized exits which relies equally upon both the gate and alarm components to realize its purpose. Thus, the Openmatic is clearly more than a sound or visual signalling apparatus.

At trial, Mr. Johnson testified that Openmatics are normally sold to retail stores, and have also been sold to office supply stores, drug stores, and a school. Tr. at 24. They are placed near the entrance way to these establishments where they channel persons into the establishment. *Id.* at 18. The promotional literature in evidence as Plaintiff's Exhibit 2 shows plaintiff emphasized that Openmatics discourage shoplifting by directing customer traffic past checkout counters as well as through a built in alarm that sounds when someone attempts to exit the "wrong" way.

Mr. Johnson testified that the sole purpose of the Openmatic gate is as a signalling device. He noted that the gate will not physically prevent anyone from an unauthorized exit because a person could easily move the gate arm in the wrong direction. Mr. Johnson emphasized the importance of the alarm which "notifies users that unauthorized exists are prohibited," if the gate arm is pushed the wrong way. Tr. at 11. He testified that the audible alarm is the thing which discourages people from unauthorized exists. Tr. at 15, 25–26. He stated, "if the alarm were not there, in effect, the device would be meaningless * * *." Tr. at 27.

However, on cross-examination, Mr. Johnson conceded that the alarm function was not the only significant characteristic of the Openmatic. Upon questioning about the relative importance of the gate to the alarm, Mr. Johnson stated, "the device without the alarm is only going to be a fraction as effective as it is without it." Tr. at 51–52. Nevertheless, he opined that, "[b]oth aspects are significant—both the gate-arm and the alarm," adding that the visual deterrent effect of the gate itself is also a significant function of the device. Tr. at 51–52. Additionally, the testimony showed that the gate and motor housing, sign and railing combine to present a per-

ceived physical and psychological barrier to unauthorized exit even though the gate would not actually prevent it. Tr. at 34, 35–36. Also, evidence showed the Openmatic is marketed primarily as a gate and only secondarily as an alarm. Plaintiff's Exhibit 2; Defendant's Exhibits A, B, D, F.

Customs further argues that court precedent precludes the Openmatic from classification as a sound or visual signalling apparatus because the gate arm and sign operate continuously and do not warn of a temporary or abnormal emergency condition.

In *Oxford International Corp.* v. *United States,* 75 Cust. Ct. 58, C.D. 4608 (1975), the Court applied the rule of *ejusdem generis* to TSUS item 685.70 to determine whether bicycle tail-lights were classifiable as other sound or signalling apparatus. The Court concluded: "the general provision 'other sound or visual signalling apparatus' must exclude articles which operate continuously, and which do not warn of the existence of emergencies or special circumstances." *Id.* at 68. The Court reasoned that the exemplars "bells, sirens, indicator panels, burglar and fire alarms," were unified by the characteristic of being activated or functioning only in temporary or abnormal conditions. Hence, the Court ruled, the generic phrase "other sound or signalling apparatus" referred to items that signalled temporary or abnormal conditions alone. The Court found that the bicycle tail-lights performed their function continuously and thus were not properly classifiable as signalling apparatus. *Id.*

More recently, in *A & A International, Inc.* v. *United States,* 5 CIT 183 (1983), the Court, citing *Oxford International Corp.,* 75 Cust. Ct. at 68, reiterated that "item 685.70 encompasses only those devices whose function is to call attention to *temporary* or *abnormal* conditions." 5 CIT at 188 (emphasis in original); *see also, NEC America, Inc.* 8 CIT at 191, 596 F. Supp. at 471 ("Classification under item 685.70, TSUS, as 'other visual or sound signalling apparatus,' however, is limited to those articles whose sole purpose and function is merely signalling."); *Amersham Corp.* v. *United States,* 5 CIT 49, 67, 564 F. Supp. 813, 825 (1983) (a visual signalling apparatus "must (1) be electrical; (2) alert persons to the presence of a potential hazard; (3) activate or function in temporary or abnormal situations only."). This Court finds these precedents persusasive.

This Court finds the Openmatic is more than primarily an alarm or sound signalling device. The Openmatic is a multifunctional device whose functions are both to signal unauthorized exits (the alarm function) as well as to control pedestrian flow and deter unauthorized exists (the gate, sign and rail function). The gate along with the photo-electric cell, rail and motor, controls ingress into the retail establishment while the physical barrier to the exit created by the gate arm and the "emergency exit only" sign deter unauthorized exits. This Court finds these functions are neither ancillary

nor incidental to the alarm's signalling function. Moreover, these functions operate continuously while the alarm operates infrequently. The fact that the gate and sign operate continuously in their capacity as visual deterrents makes Openmatics unsuitable for inclusion under this item. Like the brake lights in *Oxford International,* the gate and sign function of the Openmatic do not signal an abnormal or temporary condition, but rather an ongoing admonition against unauthorized exists.

## B. *Electro-Mechanical Appliance:*

Plaintiff alternatively claims the Openmatic is properly described as an electro-mechanical appliance under TSUS item 683.32. The parties agree that the Openmatic is an electro-mechanical device; it is controlled by electricity and has a mechanical feature. *See* Schedule C, Pretrial Order—Uncontested Facts; Defendant's Exhibit G. The parties dispute whether the Openmatic is an "appliance," within the meaning of item 683.32 TSUS. After careful examination, this Court finds the Openmatic is not properly described as an electro-mechanical appliance for purposes of classification under item 683.30 TSUS.

Customs contends the common meaning of the term "appliance" establishes that it is a device which performs what is commonly known as a "domestic" or household chore: e.g. cleaning, washing, floor polishing or food preparation. At trial and in their brief, Customs argued that to be an appliance under TSUS item 683.32 an article must be used to perform domestic chores even if those chores are performed in offices, restaurants or schools. Since controlling pedestrian flow and alerting unauthorized exits are not typically domestic chores, the Openmatic cannot property be classified as an appliance. Customs asserts the legislative history and the application of *ejusdem generis* support this view.

Plaintiff maintains that an appliance can be a machine which performs any task. Plaintiff's Reply to Brief for the United States at 3. Plaintiff argues that since TSUS item 683.32 explicitly excludes appliances used in factories, industrial appliances, and devices electro-thermic in nature, Congress implicitly acknowledged the term appliance is not exclusively characterized by its use for domestic chores. Plaintiff claims that to qualify as an appliance under this item an article need only be *of the type* used in hotels, restaurants, offices, schools *or* hospitals. Since the evidence establishes the Openmatic is suitable for use in hospitals or offices and that it has actually been sold to a school, plaintiff argues the Openmatic is *of the type* used in the places described in the item. Plaintiff claims that under such a definition the Openmatic is clearly classifiable as an electro-mechanical appliance.

Plaintiff argues the appropriate dictionary definition of appliance is "a device or machine for performing a specific task, esp[ecially] one that works mechanically or by electricity." *Webster's New*

*World Dictionary of the American Language* 67 (2d college ed. 1976). Plaintiff also cites to dictum in *Costa International Corp.* v. *United States,* 62 Cust. Ct. 729, 734, C.D. 3855 (1969), *aff'd* 58 CCPA 48, 434 F.2d 1053 (1970), in which the Court stated the word appliance means, among other things, "equipment, accouterments, appurtenances, implements, devices, etc." Plaintiff notes neither of these definitions include any reference to domestic or household chores. Customs counters with the following dictionary definitions which include a reference to domestic or household use: appliance, "a device or instrument, esp[ecially] one operated by electricity and designed for household use." *American Heritage Dictionary* 121 (2d college ed. 1982); appliance, "1. an instrument, apparatus, or device for a particular purpose or use. 2. a piece of equipment, usually operated electrically, esp[ecially] for use in the home or for performance of domestic chores, as a refrigerator, washing machine, toaster, etc." *Random House Dictionary of the English Language, see* Defendant's Brief, Addendum. The Court notes however, that the references to household use in these definitions by no means denote exclusive household use. The word "especially" suggests to this Court that other non-household uses are contemplated by the common dictionary meaning of the term appliance. Plaintiff's witness, Mr. Johnson, testified that he agreed with the substance of these definitions, but added that in his view an appliance need not be restricted to those of the type used at home. Tr. at 47.

Confronted with this ambiguity, this Court finds examination of the doctrine of *ejusdem generis* supports Customs' claim that Congress intended to restrict the term appliance in TSUS item 683.32 to appliances which perform domestic type tasks. Item 683.32, TSUS, states:

> Vacuum cleaners, floor polishers, food grinders, and mixers, juice extractors and other electro-mechanical appliances, all the foregoing with self-contained electric motors, of types used in the household, hotels, restaurants, offices, schools, or hospitals (but not including factory or other industrial appliances or electro-thermic appliances), and parts thereof .* * *

The particular words of description, "[v]acuum cleaners, floor polishers, food grinders, and mixers, juice extractors * * *" are followed by the general term "other electro-mechanical appliances," suggesting that the latter refers to objects of a like class with the descriptive works. Noting that each one of the named items are readily associated with cooking and cleaning, activities normally associated with the home, this Court is persuaded the appropriate class of objects would appear to be electro-mechanical appliances characterized by their use for household chores or tasks.

The remaining language of TSUS item 683.32 supports the conclusion that Congress intended to limit the phrase electro-mechanical appliances in this item to appliances with domestic applications,

even when such appliances were used in places outside the home. The language excluding factory or other industrial appliances from the scope of item 683.32 suggests to this court that Congress intended to differentiate appliances in this TSUS item from other appliances having primary applications in industrial or factory settings, that is, appliances with non-domestic applications. The reference to electro-mechanical appliances "*of the types used* in the household, hotels, restaurants, offices, schools, or hospitals," appears to expand the definition under this item to include appliances used to perform domestic chores in settings other than the home. For example, it is normal for vacuums to be used in offices, hospitals and hotels, and mixers to be used in restaurants and school cafeterias. Finally, the Court notes that examination of the *Nomenclature for the Classification of Goods in Customs Tariffs* (hereinafter the *Brussels Nomenclature*) would appear to support this interpretation.[4]

In this case the evidence established that the Openmatic is a pedestrial control and signalling device used primarily by retail and commercial establishments. There was no indication the Openmatic performed any domestic type function of a like type or kind as the exemplars named in TSUS item 683.32. Based on the facts of this case, this Court concludes the Openmatic cannot be classified as an electro-mechanical appliance under TSUS item 683.32.

## C. *Furniture:*

Lastly, plaintiff claims the Openmatic is properly classified as "furniture and parts thereof, not specially provided for, * * * Other," under TSUS item 727.70. The statutory definition of "furniture," in headnote 1 of Schedule 7, part 4, subpart A, provides in pertinent part as follows:

> 1. For the purposes of this subpart, the term "*furniture*" includes movable articles of utility, designed to be placed on the floor or ground, and used to equip dwellings, offices, restau-

---

[4]Customs claims the "legislative history" ilustrates Congressional intent to limit appliances under this section to appliances of domestic use or character, regardless of their place of use. Customs asserts several headnotes in Chapter 85 of the *Brussels Nomenclature* and its Explanatory Notes are similar to the TSUS headnotes up to and including item 683.32. See Defendant's Brief at 20–22. From this supposed similarity Customs argues Congress intended TSUS item 683.32 to be restricted to "domestic appliances."

Customs points to chapter 85.06 of the *Brussels Nomenclature* which provides, in its entirety, for "Electric-mechancial *domestic* appliances, with self-contained electric motor." (Emphasis added). Further, Customs contends the following Explanatory Note to Chapter 85.06 confirms that Congress intended the term "appliance" in item 683.32, TSUS, to only refer to articles which perform domestic chores.

This heading covers a number of domestic appliances in which an electric motor is incorporated. The term "domestic appliances" in this heading means *appliances normally used in the household and similar appliances* used in hotels, restaurants, offices, schools, hospitals, train kitchens, aircraft or ships' pantries, canteens, etc.

3 Explanatory Notes to the Brussels Nomenclature 933 (3d impression 1964) (emphasis added).

This Court is aware that resort to material indicative of legislative intent outside the statutory language, such as the *Brussels Nomenclature*, "is appropriate when there is ambiguity in the statutory language which would prevent the Court from ascertaining how Congress intended certain merchandise to be classified," *C.J. Van Houten & Zoon v. United States*, 11 CIT 409, 664 F. Supp. 514, 518, *aff'd*, 835 F.2d 864 (Fed. Cir. 1987), and that Courts have found the *Brussels Nomenclature* to be "a highly probative source for ascertaining legislative intent, especially where the language of the TSUS and [the *Brussels Nomenclature*] are similar." *Toyota Motor Sales, U.S.A., Inc. v. United States*, 7 CIT 178, 185, 585 F. Supp. 649, 655 (1984), *aff'd*, 3 Fed. Cir. (T) 93, 753 F.2d 1061 (1985). Nevertheless, this Court is also mindful that the *Brussels Nomenclature*, is merely a judicial " 'aid to interpreting' provisions of the TSUS where there is a 'close similarity in the wording of the provisions.' " *United States v. Kyocera Int'l, Inc.* 69 CCPA 168, 169, 681 F.2d 796, 797 (1982) (Nies, J. and Miller, J. concurring) (quoting *United States v. Abbey Rents*, 66 CCPA 2, 4 n.5, C.A.D. 1213, 585 F.2d 501, 504 n.5 (1978)).

In this case, the Court finds the language of the *Brussels Nomenclature* supportive of Customs' claim.

rants, libraries, schools, churches, hospitals, or other establishments, * * * even though such articles are designed to be screwed, bolted, or otherwise fixed in place on the floor or ground .* * *

Plaintiff claims the Openmatic falls within this definition of furniture because it is a movable article of utility designed to be placed on the floor.

Customs contends the Openmatic is not furniture because it is not movable and not an article of utility within the meaning of the headnote. Customs claims the Openmatic is not movable because it is designed to be bolted to the floor, and not an article of utility because it does not have any utilitarian purpose of any use to the occupants in a room. Customs cites to decisional law and purported legislative history to support its position.

Without reaching any of Customs' contentions here, this Court concludes the Openmatic is not furniture within the meaning of TSUS item 727.70 since this Court has already found as a factual matter that one of the significant functions of the Openmatic is to signal unauthorized exists through use of an audible alarm. This Court finds this significant aspect of the device precludes classification of the Openmatic under the subpart for furniture, for even if the Openmatic were a movable article of utility designed to be bolted to the floor, it is clearly more than simple furniture. Nothing suggests to this Court that Congress intended the term furniture to encompass movable articles of utility with sound signalling devices.

### 3. CUSTOMS' ALTERNATIVE CLASSIFICATION

Customs' alternative claim is for classification of the Openmatic under the basket provision for "articles of iron or steel * * * other" with a rate of duty the same as Customs' original classification, 6.7% *ad valorem*. Customs claims that as dual function merchandise, the only other suitable provision for classification purposes is this the basket provision. Plaintiff did not respond to this argument except to assert that its alternatives were more appropriate.

This Court has determined that classification of the merchandise under any of plaintiff's alternatives is inappropriate since, at the very least, the provisions only addressed one of the two significant functions of the merchandise. The Court concludes that since Openmatics are dual function merchandise, and the Court has not been able to find a tariff provision which encompasses both functions, the Openmatic is appropriately classified under the basket provision for articles of "iron or steel * * * Other," TSUS item 657.25.

CONCLUSION

In view of the foregoing, this Court holds that the imported Openmatics have been erroneously classified under TSUS item 653.00 as "other structures and parts of structures * * * Other" and are properly classified as articles of "iron or steel * * * Other," under TSUS item 657.25, with duty at the rate of 6.7 percent *ad valorem*. Plaintiff's application for classification of the Openmatics under its alternatives seeking a refund of all excess duties is denied; Customs' application in the alternative for classification under TSUS item 657.25 is granted; Plaintiff's application to reliquidate is denied since the rate of duty for item 653.00 TSUS is identical to that of item 657.25 TSUS. Customs is ordered to reclassify the Openmatics under item 657.25 as articles of "iron or steel * * * Other," dutiable at a rate of 6.7% *ad valorem*.